## HYNES ET AL. v. MAYOR AND COUNCIL OF BOROUGH OF ORADELL ET AL.

No. 74–1329.   Argued December 10, 1975—Decided May 19, 1976

BURGER, C. J., delivered the opinion of the Court, in which STEWART, WHITE, BLACKMUN, and POWELL, JJ., joined and in Part 3 of which BRENNAN, J., joined.   BRENNAN, J., filed an opinion con-

curring in part, in which MARSHALL, J., joined, *post*, p. 623. REHN-QUIST, J., filed a dissenting opinion, *post*, p. 630. STEVENS, J., took no part in the consideration or decision of the case.

*Telford Taylor* argued the cause for appellants. With him on the brief were *Kenneth Simon* and *Robert Funicello*.

*James A. Major* argued the cause for appellees. On the brief was *Everett I. Smith*.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

The question presented in this case is whether a municipal ordinance requiring advance notice to be given to the local police department by "[a]ny person desiring to canvass, solicit or call from house to house . . . for a recognized charitable cause . . . or . . . political campaign or cause . . . in writing, for identification only" violates the guarantees of freedom of speech and due process of law embodied in the Fourteenth Amendment.

### (1)

The Borough of Oradell, N. J., has enacted two ordinances that together regulate most forms of door-to-door canvassing and solicitation. A broad ordinance, No. 573, requires all solicitors to obtain a permit from the borough clerk, by making a formal application, accompanied by a description and photograph of the applicant, the description and license number of any automobile to be used in soliciting, a driver's license, and other data. The ordinance apparently requires that the chief of police approve issuance of the permit.[1]

---

[1] Ordinance No. 573 provides in relevant part:

*"Section 1. Permit Required*

"No person shall canvass or solicit or call from house to house in the Borough to sell or attempt to sell goods by sample or to take

The ordinance at issue here, Ordinance No. 598A, is an amendment to this broader scheme, and imposes no permit requirement; it covers persons soliciting for "a recognized charitable cause, or any person desiring to

---

or attempt to take orders for the future delivery of goods, merchandise, wares, or any personal property of any nature whatsoever, or take or attempt to take orders for services to be furnished or performed in the future, without first having received a written permit therefor.

*"Section 2. Application for Permit: Contents Thereof*

"a) Any person desiring a permit to canvass or solicit in the Borough shall file, on a form to be supplied by the Borough Clerk, an application with the Borough Clerk stating:

"(1) Name of applicant;

"(2) Permanent home address;

"(3) Name and address of employer or firm represented;

"(4) Place or places of residence of the applicant for the preceding three years;

"(5) Date on which he desires to commence canvassing or soliciting;

"(6) Nature of merchandise to be sold or offered for sale or the nature of the services to be furnished;

"(7) Whether or not the applicant has ever been convicted of a crime, misdemeanor, or violation of any ordinance concerning canvassing or soliciting, and if so, when, where and the nature of the offense;

"(8) Names of other communities in New Jersey in which applicant has worked as a solicitor or canvasser in the past 2 years.

"b) Said application shall also be accompanied by a letter or other written statement from the individual, firm or corporation employing the applicant, certifying that the applicant is authorized to act as the employer's representative.

"c) No such application shall be filed more than 3 months prior to the time such canvassing or soliciting shall commence.

.        .        .        .        .

*"Section 4. Investigation: Issuance of Permit*

"The Borough Clerk shall give a copy of the application to the Chief of Police who shall cause such investigation to be made of the applicant's business and moral character as he deems necessary for the protection of the public good. He shall use any information

canvass, solicit or call from house to house for a Federal, State, County or Municipal political campaign or cause." Ordinance No. 598A also applies to "representatives of Borough Civic Groups and Organizations and any veterans honorably discharged or released under honorable circumstances" from the Armed Forces. Those covered by this ordinance are required only to "notify the Police Department, in writing, for identification only." Once given, the notice is "good for the duration of the campaign or cause." [2]

---

available in other New Jersey cities, towns or boroughs, where the applicant has canvassed or solicited within 2 years last past.

. . . . .

"Section 6. Penalty

"Any person, firm or corporation violating any provision of this ordinance shall, upon conviction thereof, be fined in an amount not exceeding $500.00 or be imprisoned in the County Jail for a period not exceeding ninety (90) days, or be both fined and imprisoned. Each day said violation is permitted or is permitted to continue, shall constitute a separate offense and shall be subject to a penalty hereunder."

In Collingswood v. Ringgold, 66 N. J. 350, 331 A. 2d 262 (1975), appeal docketed, No. 74–1335, decided the same day as the case reviewed here, the New Jersey Supreme Court held that an ordinance quite similar to Ordinance No. 573 was invalid insofar as it vested in the chief of police too much discretion in deciding whether or not to grant a canvassing permit. The court in Collingswood accordingly struck that provision of the ordinance, but let the remainder stand.

[2] Ordinance No. 598A provides in relevant part:

"WHEREAS, The Borough of Oradell is primarily a one family residential town whose citizens are employed elsewhere, resulting in the wives of the wage earner being left alone during the day; and

"WHEREAS, because of the geographical location of most of the homes it is impossible to police all areas at the same time, resulting in a number of break and entries and larceny in the home; and

"WHEREAS, it is in the public interest and the public safety that persons not be permitted to call from house to house on the pretext of soliciting votes for a designated candidate or signatures for a nominating petition, or to solicit for a recognized charitable cause or

614

Appellants are Edward Hynes, a New Jersey state assemblyman whose district was redrawn in 1973 to include the Borough of Oradell, and three Oradell registered voters. They brought suit in the Superior Court of Bergen County, N. J., seeking a declaration that Ordinance No. 598A was unconstitutional and an injunction against its enforcement. Appellant Hynes alleged that he wished to campaign for re-election in Oradell. The other

borough activity, without such persons being first identified by the Police Department; and

"WHEREAS, the Mayor and Borough Council of The Borough of Oradell feel that it is in the public interest and for the protection of The Borough of Oradell that such persons be required to notify the Police Department for the purpose of identification.

"Now, THEREFORE, BE IT ORDAINED by the Borough Council of The Borough of Oradell, in the County of Bergen and State of New Jersey, that an ordinance entitled 'An ordinance to regulate and prohibit canvassing and soliciting in The Borough of Oradell and establish fees and provide penalties for the violation thereof' be amended and supplemented as follows:

"(1) That Section 1 be amended and supplemented by the addition of Section 1 (a) to be entitled 'Exceptions to Permit' as hereinafter set forth:

"Section 1 (a): Exceptions to Permit

"Any person desiring to canvass, solicit or call from house to house in the Borough for a recognized charitable cause, or any person desiring to canvass, solicit or call from house to house for a Federal, State, County or Municipal political campaign or cause, shall be required to notify the Police Department, in writing, for identification only. Said notification shall be good for the duration of the campaign or cause. The provisions of this section shall also apply to representatives of Borough Civic Groups and Organizations and any veterans honorably discharged or released under honorable circumstances from active service in any branch of the Armed Forces of the United States. All other Sections of Ordinance No. 573, with the exception of the penalty clause designated as Section 7 [sic], shall not be applicable to such persons or groups as designated herein.

"(2) All ordinances or parts of ordinances inconsistent with this ordinance are hereby repealed."

appellants alleged either that they wished to canvass door to door in the borough for political causes or that they wished to speak with candidates who campaigned in Oradell. Each appellant claimed that the ordinance would unconstitutionally restrict such activity.

The Superior Court held the ordinance invalid for three reasons. First, the court noted that it contained no penalty clause, and hence was unenforceable under New Jersey law; second, the court held that the ordinance was not related to its announced purpose—the prevention of crime—since it required only candidates and canvassers to register.[3] Finally, the court concluded that the ordinance was vague and overbroad—unclear "as to what is, and what isn't required" of those who wished to canvass for political causes. The Appellate Division of the Superior Court affirmed, reaching and accepting only the first ground for the trial court's decision.

The Supreme Court of New Jersey reversed. 66 N. J. 376, 331 A. 2d 277 (1975). It noted that a penalty clause, enacted during the pendency of the appeal, cured the defect that had concerned the Appellate Division. Relying largely on a decision in a case dealing with a similar ordinance, *Collingswood* v. *Ringgold,* 66 N. J. 350, 331 A. 2d 262 (1975), appeal docketed, No. 74-1335, the court held that Ordinance No. 598A was a legitimate exercise of the borough's police power, enacted to prevent crime and to reduce residents' fears about strangers wandering door to door. The ordinance regulated conduct—door-to-door canvassing—as well as speech, and in doing so "it could hardly be more clear." 66 N. J., at 380, 331 A. 2d, at 279. The ordinance, the court thought, imposed

---

[3] The trial court's opinion in this regard appears to ignore the provisions of Ordinance No. 573, which covers other forms of door-to-door solicitation, and to which Ordinance No. 598A is an amendment.

minimal requirements which did not offend free speech interests:

"It may be satisfied in writing, suggesting that resort may be had to the mails. It need be fulfilled only once for each campaign. There is no fee. The applicant does not have to obtain or carry a card or license. And perhaps most importantly, no discretion reposes in any municipal official to deny the privilege of calling door to door. The ordinance is plainly an identification device in its most basic form." *Ibid.*

Two of the court's seven members dissented. One justice thought the ordinance "plain silly" as a crime-prevention measure, for the reasons given by the trial court. *Id.,* at 382, 331 A. 2d, at 280; another justice thought that the "ordinance has the potential to have a significant chilling effect on the exercise of first amendment rights and thus infringes on these rights." *Id.,* at 389, 331 A. 2d, at 284.

(2)

We are not without guideposts in considering appellants' First Amendment challenge to Ordinance No. 598A. "Adjustment of the inevitable conflict between free speech and other interests is a problem as persistent as it is perplexing," *Niemotko* v. *Maryland,* 340 U. S. 268, 275 (1951) (Frankfurter, J., concurring in result), and this Court has in several cases reviewed attempts by municipalities to regulate activities like canvassing and soliciting. Regulation in this area "must be done, and the restriction applied, in such a manner as not to intrude upon the rights of free speech and free assembly," *Thomas* v. *Collins,* 323 U. S. 516, 540–541 (1945). But in these very cases the Court has consistently recognized a municipality's power to protect its citizens from crime and undue annoyance by regulating

soliciting and canvassing. A narrowly drawn ordinance, that does not vest in municipal officials the undefined power to determine what messages residents will hear, may serve these important interests without running afoul of the First Amendment.

In *Lovell* v. *Griffin,* 303 U. S. 444 (1938), the Court held invalid an ordinance that prohibited the distribution of "literature of any kind . . . without first obtaining written permission from the City Manager," *id.,* at 447. The ordinance contained "no restriction in its application with respect to time or place," and was "not limited to ways which might be regarded as inconsistent with the maintenance of public order or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets." *Id.,* at 451.

A year later, in *Schneider* v. *State,* 308 U. S. 147 (1939), the Court held unconstitutional an Irvington, N. J., ordinance that dealt specifically with house-to-house canvassers and solicitors. The ordinance required them to obtain a permit, which would not issue if the chief of police decided that "the canvasser is not of good character or is canvassing for a project not free from fraud." *Id.,* at 158. Because the Court concluded that the canvasser's "liberty to communicate with the residents of the town at their homes depends upon the exercise of the officer's discretion," *id.,* at 164, the Court held the ordinance invalid. In *Cantwell* v. *Connecticut,* 310 U. S. 296 (1940), the Court held that a similar permit ordinance, as applied to prevent Jehovah's Witnesses from soliciting door to door, infringed upon the right to free exercise of religion, guaranteed by the First and Fourteenth Amendments. And in *Martin* v. *Struthers,* 319 U. S. 141 (1943), the Court struck down a municipal ordinance that made it a crime for a solicitor or canvasser to knock on the front door

of a resident's home or ring the doorbell. See also *Staub* v. *City of Baxley,* 355 U. S. 313 (1958).

In reaching these results, the Court acknowledged the valid and important interests these ordinances sought to serve. In *Martin, supra,* at 144, Mr. Justice Black writing for the Court stated:

> "Ordinances of the sort now before us may be aimed at the protection of the householders from annoyance, including intrusion upon the hours of rest, and at the prevention of crime. Constant callers, whether selling pots or distributing leaflets, may lessen the peaceful enjoyment of a home as much as a neighborhood glue factory or railroad yard which zoning ordinances may prohibit. . . . In addition, burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later. Crime prevention may thus be the purpose of regulatory ordinances."

As Mr. Justice Black suggested, the lone housewife has no way of knowing whether the purposes of the putative solicitor are benign or malignant, and even an innocuous caller "may lessen the peaceful enjoyment of a home." *Ibid.* In his view a municipality "can by identification devices" regulate canvassers in order to deter criminal conduct by persons "posing as canvassers," *id.,* at 148, relying on the Court's statement in *Cantwell, supra,* at 306:

> "Without doubt a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his

identity and his authority to act for the cause which he purports to represent."

These opinions of the Court and the dissenting opinions found common ground as to the important municipal interests at stake.   See *Martin* v. *Struthers, supra,* at 152 (Frankfurter, J., dissenting); *id.,* at 154 (Reed, J., dissenting); *Douglas* v. *Jeannette,* 319 U. S. 157, 166 (1943) (Jackson, J., dissenting in *Martin* v. *Struthers*).   Professor Zechariah Chafee articulated something of the householder's right to be let alone, saying:

> "Of all the methods of spreading unpopular ideas, [house-to-house canvassing] seems the least entitled to extensive protection.   The possibilities of persuasion are slight compared with the certainties of annoyance.   Great as is the value of exposing citizens to novel views, home is one place where a man ought to be able to shut himself up in his own ideas if he desires."   Free Speech in the United States 406 (1954).

Professor Chafee went on to note: "[These cases] do not invalidate all ordinances that include within their scope . . . doorway dissemination of thought.   Several sentences in the opinions state that ordinances suitably designed to take care of legitimate social interests are not void."   *Id.,* at 407.

There is, of course, no absolute right under the Federal Constitution to enter on the private premises of another and knock on a door for any purpose, and the police power permits reasonable regulation for public safety. We cannot say, and indeed appellants do not argue, that door-to-door canvassing and solicitation are immune from regulation under the State's police power, whether the purpose of the regulation is to protect from danger or to protect the peaceful enjoyment of the home.   See

*Rowan* v. *Post Office Dept.*, 397 U. S. 728, 735–738 (1970).

(3)

There remains the question whether the challenged ordinance meets the test that in the First Amendment area "government may regulate . . . only with narrow specificity." *NAACP* v. *Button,* 371 U. S. 415, 433 (1963). As a matter of due process, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta* v. *New Jersey,* 306 U. S. 451, 453 (1939). The general test of vagueness applies with particular force in review of laws dealing with speech. "[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser." *Smith* v. *California,* 361 U. S. 147, 151 (1959). See also *Buckley* v. *Valeo,* 424 U. S. 1, 76–82 (1976); *Broadrick* v. *Oklahoma,* 413 U. S. 601, 611–612 (1973).

Notwithstanding the undoubted power of a municipality to enforce reasonable regulations to meet the needs recognized by the Court in the cases discussed, we conclude that Ordinance No. 598A must fall because in certain respects "men of common intelligence must necessarily guess at its meaning." *Connally* v. *General Constr. Co.,* 269 U. S. 385, 391 (1926). Since we conclude that the ordinance is invalid because of vagueness, we need not reach the other arguments appellants advance.[4]

---

[4] Appellants also argue that the ordinance bears no rational relationship to its announced purpose of crime prevention, that it is overbroad because it covers Oradell residents casually soliciting the votes of neighbors, and that it violates the Privileges and Immunities Clause of the Fourteenth Amendment by infringing on the right

First, the coverage of the ordinance is unclear; it does not explain, for example, whether a *"recognized* charitable cause" means one recognized by the Internal Revenue Service as tax exempt, one recognized by some community agency, or one approved by some municipal official. While it is fairly clear what the phrase "political campaign" comprehends, it is not clear what is meant by a "Federal, State, County or Municipal ... *cause."* Finally, it is not clear what groups fall into the class of "Borough Civic Groups and Organizations" that the ordinance also covers.[5]

Second, the ordinance does not sufficiently specify what those within its reach must do in order to comply. The citizen is informed that before soliciting he must "notify the Police Department, in writing, for identification only." But he is not told what must be set forth in the notice, or what the police will consider sufficient as "identification." This is in marked contrast to Ordinance No. 573 which sets out specifically what is required of commercial solicitors; it is not clear that the provisions of Ordinance 573 extend to Ordinance 598A. See n. 1, *supra.* Ordinance No. 598A does not have comparable precision. The New Jersey Supreme Court construed the ordinance to permit one to send the required identification by mail; a canvasser who used the mail might well find—too late—that the iden-

---

to meet and discuss national candidates. We intimate no view as to these contentions.

[5] The flaw we find in this ordinance is vagueness, not the overbreadth at issue in *Broadrick* v. *Oklahoma,* 413 U. S. 601 (1973), on which the dissent relies. Several appellants alleged that their right to receive information would be infringed because persons canvassing for political causes would be uncertain whether the ordinance covered them. In the circumstances of this case these allegations are enough to put in issue the precision or lack of precision with which the ordinance defines the categories of "causes" it covers.

tification he provided by mail was inadequate. In this respect, as well as with respect to the coverage of the ordinance, this law "may trap the innocent by not providing fair warning." *Grayned* v. *City of Rockford,* 408 U. S. 104, 108 (1972). Nor does the ordinance "provide explicit standards for those who apply" it. *Ibid.* To the extent that these ambiguities and the failure to explain what "identification" is required give police the *effective* power to grant or deny permission to canvass for political causes, the ordinance suffers in its practical effect from the vice condemned in *Lovell, Schneider, Cantwell,* and *Staub.* See also *Papachristou* v. *City of Jacksonville,* 405 U. S. 156, 162 (1972); *Coates* v. *City of Cincinnati,* 402 U. S. 611, 614 (1971); Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67, 75–85 (1960).

The New Jersey Supreme Court undertook to give the ordinance a limiting construction by suggesting that since the identification requirement "may be satisfied in writing, . . . resort may be had to the mails," 66 N. J., at 380, 331 A. 2d, at 279, but this construction of the ordinance does not explain either what the law covers or what it requires; for example, it provides no clue as to what is a "recognized charity"; nor is political "cause" defined. Cf. *Colten* v. *Kentucky,* 407 U. S. 104, 110–111 (1972); *Chaplinsky* v. *New Hampshire,* 315 U. S. 568 (1942); *Cox* v. *New Hampshire,* 312 U. S. 569 (1941). Even assuming that a more explicit limiting interpretation of the ordinance could remedy the flaws we have pointed out—a matter on which we intimate no view—we are without power to remedy the defects by giving the ordinance constitutionally precise content.[6] *Smith* v. *Goguen,* 415 U. S. 566, 575 (1974).

---

[6] The agency charged with enforcement, the police department, has not adopted any regulations that would give more precise mean-

Accordingly, the judgment is reversed, and the case is remanded to the Supreme Court of New Jersey for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, concurring in part.

I join Part 3 of the Court's opinion holding that Oradell Ordinance No. 598A must be invalidated as impermissibly vague. The Court reserves decision on other constitutional contentions alleged to invalidate the ordinance. *Ante,* at 620–621, n. 4. Despite this reservation, Part 2 of the Court's opinion may be read as suggesting that, vagueness defects aside, an ordinance of this kind would ordinarily withstand constitutional attack. Because I believe that such ordinances must encounter substantial First Amendment barriers besides vagueness, I cannot join Part 2 and briefly state my reasons.

In considering the validity of laws regulating door-to-door solicitation and canvassing, Mr. Justice Black, speaking for the Court in *Martin* v. *Struthers,* 319 U. S.

ing to the ordinance—if indeed it has the legal power to do so. Cf. *Broadrick,* 413 U. S., at 616–617; *CSC* v. *Letter Carriers,* 413 U. S. 548, 575 (1973); *Law Students Research Council* v. *Wadmond,* 401 U. S. 154, 162–163 (1971). The chief of police suggested in an affidavit that neither a photograph nor fingerprints are required, and that the canvasser must simply "let us know who he is." To the extent that this explanation adds any specificity to the ordinance, it does not purport to be binding on the enforcement authorities. Cf. *ibid.* Nor has the ordinance a history of "less formalized custom and usage" that might remedy the vagueness problems. *Parker* v. *Levy,* 417 U. S. 733, 754 (1974).

141 (1943), properly recognized that municipalities have an important interest in keeping neighborhoods safe and peaceful. But unlike the Court today, he did not stop there. Rather, he emphasized the other side of the equation—that door-to-door solicitation and canvassing is a method of communication essential to the preservation of our free society. He said:

"While door to door distributers of literature may be either a nuisance or a blind for criminal activities, they may also be useful members of society engaged in the dissemination of ideas in accordance with the best tradition of free discussion. The widespread use of this method of communication by many groups espousing various causes attests its major importance. 'Pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people.' *Schneider* v. *State*, [308 U. S. 147, 164 (1939)]. Many of our most widely established religious organizations have used this method of disseminating their doctrines, and laboring groups have used it in recruiting their members. The federal government, in its current war bond selling campaign, encourages groups of citizens to distribute advertisements and circulars from house to house. Of course, as every person acquainted with political life knows, door to door campaigning is one of the most accepted techniques of seeking popular support, while the circulation of nominating papers would be greatly handicapped if they could not be taken to the citizens in their homes. Door to door distribution of circulars is essential to the poorly financed causes of little people." *Id.,* at 145–146.

It can hardly be denied that an ordinance requiring

the door-to-door campaigner to identify himself discourages free speech. *Talley* v. *California,* 362 U. S. 60 (1960), invalidated a Los Angeles ordinance requiring handbills to carry the name and address of persons writing, printing, or distributing them. Since the requirement destroyed anonymity, "[t]here [could] be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression," *id.,* at 64, for:

> "Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind. Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all. . . . Even the Federalist Papers, written in favor of the adoption of our Constitution, were published under fictitious names. It is plain that anonymity has sometimes been assumed for the most constructive purposes." *Id.,* at 64–65.

No less may be said of anonymity sought to be preserved in the door-to-door exposition of ideas. That anonymity is destroyed by an identification requirement like the Oradell ordinance.[1] "[I]dentification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance," *id.,* at 65, particularly where door-to-door solicitation seeks discussion of sensitive and controversial issues, such as civilian police .

---

[1] Ordinance 598A does not expressly require solicitors to identify the political campaign or candidate for whose cause they solicit. It may be that such a requirement is implicit in the provision that "notification [to the police] shall be good for the duration of the campaign or cause." If so, there may be a First Amendment question whether that disclosure can be compelled. Indeed, that question would be presented even if a requirement of personal identification could withstand First Amendment challenge.

review boards, the decriminalization of specified types of
conduct, or the recall of an elected police official. De-
plorably, apprehension of reprisal by the average citizen
is too often well founded. The national scene in recent
times has regrettably provided many instances of penal-
ties for controversial expression in the form of vindictive
harassment, discriminatory law enforcement, executive
abuse of administrative powers, and intensive govern-
ment surveillance.[2]

Nor is the threat to free expression by ordinances of
this type limited to their jeopardization of anonymity.
Perhaps an even greater threat lies in the impermissible
burden they impose upon political expression, the core
conduct protected by the First Amendment.[3] Unques-

---

[2] Our recent decision in *Buckley* v. *Valeo*, 424 U. S. 1 (1976), is
wholly consistent with this view. *Buckley* clearly recognized that
"compelled disclosure, in itself, can seriously infringe on privacy
of association and belief guaranteed by the First Amendment." *Id.*,
at 64. See *id.*, at 68, 71, 81–82. In *Buckley,* the Court did uphold
the disclosure provisions of the Federal Election Campaign Act de-
spite their effect on anonymity, distinguishing *Talley* v. *California,*
362 U. S. 60 (1960), as involving a disclosure law not narrowly lim-
ited to situations where the information sought has a substantial
connection with the governmental interest sought to be advanced.
Here, however, there are substantial questions whether identification
requirements like Oradell's are so adequately related to their purpose
as to withstand First Amendment challenge. See *infra*, at 628–630.
Moreover, door-to-door solicitation, unlike the contribution of money,
is an activity of high visibility. Consequently, the danger of deter-
rence is much greater here than with respect to contributions. In-
deed, *Buckley,* in expressing its concern for the special problems of
minority parties, recognized the greater threat posed to free speech
where smaller numbers result in the clearer association of individuals
with a cause. See 424 U. S., at 68–72.

[3] "Discussion of public issues and debate on the qualifications
of candidates are integral to the operation of the system of gov-
ernment established by our Constitution. The First Amendment
affords the broadest protection to such political expression in order

tionably, the lifeblood of today's political campaigning must be the work of volunteers. The oppressive financial burden of campaigns makes reliance on volunteers

'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' *Roth* v. *United States,* 354 U. S. 476, 484 (1957). Although First Amendment protections are not confined to 'the exposition of ideas,' *Winters* v. *New York,* 333 U. S. 507, 510 (1948), 'there is practically universal agreement that a major purpose of th[e] Amendment was to protect the free discussion of governmental affairs, . . . of course includ[ing] discussions of candidates . . . .' *Mills* v. *Alabama,* 384 U. S. 214, 218 (1966). This no more than reflects our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,' *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 270 (1964). In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation. As the Court observed in *Monitor Patriot Co.* v. *Roy,* 401 U. S. 265, 272 (1971), 'it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office.' " *Buckley* v. *Valeo, supra,* at 14–15.

"The First Amendment does not protect a 'freedom to speak.' It protects the freedom of those activities of thought and communication by which we 'govern.'. . .

"In the specific language of the Constitution, the governing activities of the people appear only in terms of casting a ballot. But in the deeper meaning of the Constitution, voting is merely the external expression of a wide and diverse number of activities by means of which citizens attempt to meet the responsibilities of making judgments, which that freedom to govern lays upon them. . . .

"The responsibilities mentioned are of three kinds. We, the people who govern, must try to understand the issues which, incident by incident, face the nation. We must pass judgment upon the decisions which our agents make upon those issues. And, further, we must share in devising methods by which those decisions can be made wise and effective or, if need be, supplanted by others which promise greater wisdom and effectiveness. . . . These are the activities to whose freedom [the First Amendment] gives its

absolutely essential and, in light of the enormous significance of citizen participation to the preservation and strength of the democratic ideal, absolutely desirable, indeed indispensable. Offensive to the sensibilities of private citizens, identification requirements such as the Oradell ordinance, even in their least intrusive form, must discourage that participation.

I recognize that there are governmental interests that may justify restraints on free speech. But in the area of First Amendment protections, "[t]he rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice. . . . Accordingly, whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, must have clear support in public danger, actual or impending." *Thomas* v. *Collins*, 323 U. S. 516, 530 (1945). Restraints implicit in identification requirements, however, extend beyond restrictions on time and place—they chill discussion itself. The Oradell type of ordinance therefore raises substantial First Amendment questions not presented by the usual time, place, and manner regulation.[4] See *Grayned* v. *City of Rockford,*

---

unqualified protection." Meiklejohn, The First Amendment is an Absolute, 1961 Sup. Ct. Rev. 245, 255.

[4] To be sure, Mr. Justice Black did observe in *Martin* v. *Struthers*, 319 U. S. 141, 148 (1943), that "[a] city can . . . by identification devices control the abuse of the privilege by criminals posing as canvassers." The validity of that passing remark, however, may be questioned in light of the later decisions in *Talley* v. *California, supra,* and *Thomas* v. *Collins*, 323 U. S. 516 (1945). Moreover, the footnote accompanying that statement apparently limited its applicability to solicitation of money. The footnote states: " 'Without doubt a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly *to solicit funds* for any purpose, to establish his identity and his authority to act for the cause which he purports to repre-

408 U. S. 104, 115 (1972). Under the ordinance, no authentication of identity need be submitted, and therefore the requirement can be easily evaded.[5] In that circumstance, the requirement can hardly be justified as protective of overriding governmental interests since evasion can easily thwart that objective. See *Buckley* v. *Valeo,* 424 U. S. 1, 45 (1976). But imposition of more burdensome identification requirements, such as authentication, would doubtless only serve further to discourage protected activity and, therefore, not eliminate the First Amendment difficulty. Moreover, the purported aid to crime prevention provided by identification of solicitors is not so self-evident as to relieve the State of the burden of proving that this asserted interest would be served. What Mr. Justice Harlan said of the handbill ordinance invalidated in *Talley* may equally be said of ordinances of the Oradell type:

> "Here the State says that this ordinance is aimed at the prevention of 'fraud, deceit, false advertising, negligent use of words, obscenity, and libel,' in that

---

sent,'" 319 U. S., at 148 n. 14 (emphasis added) (quoting *Cantwell* v. *Connecticut,* 310 U. S. 296, 306 (1940)). But, as I suggest in the text, solicitation of support for a candidate in a political campaign presents a First Amendment question of a very different order. The opinion in *Thomas* draws the distinction:

"We think a requirement that one must register before he undertakes to make a public speech to enlist support for a lawful movement is quite incompatible with the requirements of the First Amendment.

"Once the speaker goes further, however, and engages in conduct which amounts to more than the right of free discussion comprehends, as when he undertakes the collection of funds or securing subscriptions, he enters a realm where a reasonable registration or identification requirement may be imposed. . . ." 323 U. S., at 540.

[5] Indeed, the opinion of the New Jersey Supreme Court suggests that mailing the information would satisfy the ordinance's identification requirements. See 66 N. J. 376, 380, 331 A. 2d 277, 279 (1975).

it will aid in the detection of those responsible for spreading material of that character. But the ordinance is not so limited, and I think it will not do for the State simply to say that the circulation of all anonymous handbills must be suppressed in order to identify the distributors of those that may be of an obnoxious character. In the absence of a more substantial showing as to Los Angeles' actual experience with the distribution of obnoxious handbills, such a generality is for me too remote to furnish a constitutionally acceptable justification for the deterrent effect on free speech which this all-embracing ordinance is likely to have." 362 U. S., at 66–67 (concurring opinion).[6]

Contrary to the thrust of Part 2 of the Court's opinion, it seems inescapable that ordinances of the Oradell type, however precisely drafted to avoid the pitfalls of vagueness, must present substantial First Amendment questions. The imperiling of precious constitutional values, for reasons however justifiable, cannot be taken lightly. The prevention of crime is, of course, one of the most serious of modern-day problems. But our perception as individuals of the need to solve that particular problem should not color our judgment as to the constitutionality of measures aimed at that end.

MR. JUSTICE REHNQUIST, dissenting.

I agree with virtually everything said in Parts 1 and 2 of the Court's opinion, which indicates that the Oradell

---

[6] See also Buckley v. Valeo, 424 U. S., at 64: "We long have recognized that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest. Since [NAACP v. Alabama, 357 U. S. 449 (1958)] we have required that the subordinating interests of the State must survive exacting scrutiny. We also have insisted that there be a 'relevant correla-

ordinance in question can survive a wide range of "as applied" challenges based on the First and Fourteenth Amendments. I do not agree with Part 3 of the Court's opinion, which concludes that the ordinance is unconstitutionally vague as presently drafted.

The Court recognizes that none of our cases have ever suggested that a regulation requiring only identification of canvassers or solicitors would violate any constitutional limitation. As noted by the Court in Part 2 of its opinion, at least two decisions have taken care to point out that such ordinances would unquestionably be valid. See *Cantwell* v. *Connecticut*, 310 U. S. 296, 306 (1940); *Martin* v. *Struthers*, 319 U. S. 141, 148 (1943).

I also agree with the Court's observation that:

> "A narrowly drawn ordinance, that does not vest in municipal officials the undefined power to determine what messages residents will hear, may serve these important interests without running afoul of the First Amendment." *Ante,* at 617.

The Court goes on to point out that this element of unbridled official discretion was present in all those cases in which the Court has invalidated laws which might otherwise be thought to bear a superficial resemblance to the ordinance at issue here. There is clearly no such vice in the Oradell ordinance. As the Court recognizes, Ordinance No. 598A "imposes no permit requirement." *Ante,* at 612. Instead, it comes to us with the binding, *NAACP* v. *Button*, 371 U. S. 415, 432 (1963), construction of the New Jersey Supreme Court that under Oradell's law "no discretion reposes in any municipal official to deny the privilege of calling door to door." *Ante,* at 616, quoting from 66 N. J. 376, 380, 331 A. 2d 277, 279 (1975).

---

tion' or 'substantial relation' between the governmental interest and the information required to be disclosed."

After demonstrating the undoubted constitutional validity of Oradell's ordinance in all other respects, the Court proceeds in Part 3 of its opinion to determine that the ordinance is unconstitutional because of its asserted vagueness. But even allowing for the stricter standard which the Court says is appropriate in dealing with laws regulating speech, *ante,* at 620, I fail to see any vagueness in this ordinance which would not inhere in any ordinance or statute which has never been applied.

The first alleged infirmity cited by the Court is that the ordinance's coverage is unclear. It suggests that this occurs because it is difficult to ascertain precisely what "causes" are covered by the law or what groups come within a general definition found therein. Assuming for the moment that these references in the ordinance may be "vague," at least as that term is colloquially employed, there is no one in this case who may raise any claim that this "vagueness" is of constitutional dimension. From their verified complaint filed in Bergen County Superior Court, it is clear that appellants asserted interests only in the ordinance's effect upon political canvassing, either as it would deter their own ability to seek political support or in their desire to receive such entreaties in their homes. App. F. None of the appellants assert any connection with "charitable" or any other "causes," nor do they profess membership in any groups which might come within the class of "Borough Civic Groups and Organizations" which the Court believes to be somehow unclearly defined. And since the Court accepts that the only conduct which appellants present—political canvassing—may validly be regulated by means of an identification requirement more "narrowly drawn" than that at issue here, there would seem to be no justification, even on the Court's theory of this case, to permit appellants to raise claims which others might have against the

ordinance. *Broadrick* v. *Oklahoma,* 413 U. S. 601 (1973).

The Court seems initially to suggest in a footnote, *ante,* at 621 n. 5, that reliance upon a "vagueness" theory may somehow displace the normal prohibition against assertion of constitutional *jus tertii.* Any logic in such a purported distinction escapes me. *Broadrick* recognized that it is *only* the application of the doctrine of "overbreadth" which sometimes permits limited exceptions to traditional rules of standing in the First Amendment area. 413 U. S., at 610–616. Here no tenable overbreadth claim exists, and the Court correctly eschews reliance upon that doctrine. Thus the only claims properly before us are those based upon rights personal to the appellants.* I do not understand the Court to dispute this proposition: instead of attempting to rely upon whatever distinctions which invocation of "vagueness" may afford, the Court in its footnote goes on to discover allegations of several appellants regarding asserted personal "rights" to receive information of political *causes* which it concludes are sufficient to confer standing. I read the appellants' complaint differently than does the Court. But more fundamentally, I fail to see how assertion of a purported "right to receive information" may permit one to raise a challenge grounded upon hypo-

---

*Had appellants attempted to bring their action in the Federal District Court for the District of New Jersey, *Younger* v. *Harris,* 401 U. S. 37 (1971), and its companion cases would seem to pose insuperable barriers to its successful maintenance. But as the New Jersey courts chose to entertain appellants' constitutional challenge to the Oradell ordinance despite its having never been applied, the considerations of equity, comity, and federalism which underlie the holding in *Younger* are here largely absent. And since the judgment of the New Jersey Supreme Court is reviewable on our obligatory docket, 28 U. S. C. § 1257 (2), some of appellants' claims are properly before the Court.

thetical canvassers' potential uncertainty regarding coverage of an ordinance. And even if the Court were correct in determining that the scope of "political cause" is properly drawn into question, its expressions of uncertainty as to what constitutes a "recognized charitable cause" or a "Borough Civic Group [or] Organization" continue to float wholly detached from any plaintiff with standing to challenge those aspects of the ordinance's coverage.

Assuming, on the other hand, that such issues as to the clarity of the coverage of Ordinance No. 598A are properly before the Court, I can see no constitutional infirmity in its language. In *Broadrick* we held that claims of vagueness directed against indistinguishable phrasing found in Oklahoma's Merit System of Personnel Administration Act were "all but frivolous." 413 U. S., at 607. In so doing we recognized:

> "Words inevitably contain germs of uncertainty and . . . there may be disputes over the meaning of such terms . . . . But . . . 'there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the [definitions] may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.'" *Id.*, at 608, quoting from *CSC* v. *Letter Carriers*, 413 U. S. 548, 578–579 (1973).

*Broadrick*'s recognition of the inherent limitations upon anticipating and defining away every problem of interpretation which might arise regarding a new statute is undeniably sound, and it is largely dispositive of any claim that the ordinance's coverage is so unclear as to violate constitutional limitations.

The other shortcoming which the Court criticizes is the ordinance's failure to "sufficiently specify what those within its reach must do in order to comply." *Ante,* at 621. But, as the Court recognizes, the ordinance demands quite plainly that a person such as appellant Hynes who desires to canvass in the borough must "notify the Police Department, in writing, for identification only." As the chief of police of the borough of Oradell put it in an affidavit submitted to the Superior Court: "All that is asked is that [a political candidate] let us know who he is." App. G–5. I cannot see how this provision can possibly become the trap for the unwary the Court suggests in its opinion.

Appellant Hynes, for example, knows he is involved in a political campaign and that he must identify himself, in writing, to the Oradell Police Department if he desires to canvass door to door there. Should he have any doubts as to whether his identification is sufficiently detailed, he has simple recourse close at hand; he need only ask the Oradell police: "Is that enough? Do you require anything more?" Persons may thus learn exactly what is required in practice. The Court hypothesizes that a canvasser who chose to submit the requisite identification to the Oradell police by mail might learn "too late" that his submission was inadequate. Such good-faith attempts at compliance might be found to preclude liability, and the availability of similar narrowing constructions says a good deal about the wisdom of declaring this law unconstitutional before it has ever been applied. But even apart from these considerations the most that the ordinance imposes upon potential casvassers is the necessity of identifying themselves sufficiently in advance to ensure they have satisfied the law before embarking door to door in Oradell. Such a delay, which can hardly be more than a few days, is surely not

an unconstitutional burden upon appellants' rights. Surely "the guarantees of freedom of speech and due process of law embodied in the Fourteenth Amendment," *ante,* at 611, do not require that an ordinance validly requiring the identification of citizens must specify every way in which they may satisfactorily provide that information. No constitutional value is served by permitting persons who have avoided any possibility of attempting to ascertain how they may comply with a law to claim that their studied ignorance demonstrates that the law is impermissibly vague.

Finally, I do not understand the Court's concluding observations regarding the vice of vagueness which it perceives in the ordinance's compliance directive. The Court suggests that unspecified ambiguities may "give police the *effective* power to grant or deny permission to canvass for political causes." *Ante,* at 622. But as the Court itself notes in Part 2 of its opinion, it has been authoritatively held as a matter of New Jersey law that this ordinance reposes "no discretion ... in any municipal official to deny the privilege of calling door to door." Thus the authorities which the Court cites directly before the penultimate paragraph of its opinion afford no support for the result it reaches.

The Court "intimate[s] no view" as to appellants' other contentions, *ante,* at 621 n. 4. Since I do not agree that there exists any unconstitutional vagueness in Ordinance No. 598A, I have felt obliged to consider these contentions to determine if today's result can be defended upon some other ground. I do not believe that it can be. I would therefore affirm the judgment of the Supreme Court of New Jersey.