Faye WEISSMAN and Jack Hagel, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

CITY OF ALAMOGORDO, NEW MEXICO, City of Grants, New Mexico, and County of Los Alamos, New Mexico, Defendants.

Nos. 79–117, 79–118 and 79–119.

United States District Court,
D. New Mexico.

June 21, 1979.

Mark W. Bennett, Allen, Babich & Bennett, Des Moines, Iowa, Michael L. Rosenfield, Reiselt & Rosenfield, Albuquerque, N. M., for plaintiffs.

Steven Sanders, Alamogordo, N. M., for Alamogordo.

Ray Villani, Grants, N. M., for Grants.

Douglas Fraser, Los Alamos, N. M., for Los Alamos.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

THIS MATTER comes before the Court upon plaintiffs' motion for summary judgment.[1] For the reasons stated below the motion will be granted in part and denied in part.

This action arose after cases 79–117, 79–118 and 79–119 were consolidated by order of this Court. Each case was an action for declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, brought by two members[2] of the Holy Spirit Association for the Unification of World Christianity (hereinafter, the Unification Church) to enjoin the enforcement of, and declare unconstitutional, certain Green River type ordinances of the New Mexico municipalities of Alamogordo and Grants, and the County of Los Alamos.

By their complaint plaintiffs allege the following: that they are members of the Unification Church, a California non-profit corporation holding federal and state tax exemptions as a religious, non-profit organization; that the Unification Church was founded in 1954 in Seoul, Korea, and since that time has established itself in over eleven countries and around the world with functioning church centers in over one-hundred and twenty cities throughout the United States; that the Church emphasizes evangelical missionary engagements including proselytizing and solicitation of funds door to door to support the Church's many activities; that the defendants are municipal corporations, duly created and authorized pursuant to the laws of the State of New

---

1. Plaintiffs have characterized it as a motion in Limine.

2. Shortly after the cases were ordered consolidated, this Court held a hearing on plaintiffs' class action allegations and granted class action status to all members of the Unification Church similarly situated.

Mexico; that the individual plaintiffs and the Unification Church are preparing an itinerary for traveling evangelical teams to visit the State of New Mexico, specifically the defendant municipalities; and that presently, plaintiffs have no adequate means of access to the residents of the defendant municipalities for the purpose of religious proselytizing and solicitation of funds, without jeopardizing and exposing themselves to imminent and immediate arrest and prosecution or threat of arrest and prosecution by the defendant municipalities under their respective Green River type ordinances.

Plaintiffs further contend that they are entitled to declaratory and injunctive relief because the Green River type ordinances are unconstitutional on their face, and as construed and applied to plaintiffs' proselytizing and solicitation of funds from the public, in that the ordinances abridge their freedom of association, speech, assembly and free exercise of religious beliefs and deny Due Process and Equal Protection of the law, as guaranteed by the First and Fourteenth Amendments of the Constitution.

Defendants have denied that their respective ordinances are constitutionally invalid on their face. They further contend that the ordinances are not invalid as applied to plaintiffs and that, specifically, plaintiffs' proposed actions are commercial, rather than religious, activity properly regulated by the ordinances in question.

The sole issue on this motion for summary judgment, however, is whether the ordinances are constitutionally invalid on their face. Accordingly, the Court makes no finding regarding the political, religious or commercial nature of plaintiffs' activities or whether the ordinances are invalid as applied to plaintiffs.

## THE GRANTS AND LOS ALAMOS ORDINANCES

The Los Alamos ordinance is similar to the Grants ordinance in all material respects. Accordingly, only Grants City Ordinance No. 150 will be set out below. It is a typical Green River Ordinance and states in material part as follows:

The practice of going in and upon private residences in the Town of Grants, New Mexico, by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, not having been requested or invited to do so by the owner or owners, occupant or occupants, of said private residence or residences, for the purpose of soliciting or hawking the same, is hereby declared to be a nuisance, and punishable as such nuisance as a misdemeanor.

Thus, the Grants and Los Alamos ordinances flatly prohibit door to door solicitation without distinguishing between commercial and non-commercial endeavors. This distinction is crucial, however, because the Supreme Court has repeatedly held that Green River Ordinances cannot constitutionally prohibit religious or non-commercial door to door solicitation. *Cantwell v. Connecticut,* 310 U.S. 296, 306, 60 S.Ct. 900, 84 L.Ed. 1213 (1939); *Martin v. Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943).

This principle was recently illustrated in the case of *Love v. Mayor, City of Cheyenne, Wyoming,* 448 F.Supp. 128 (D.Wyo. 1978). In a factual setting remarkably similar to those alleged in the instant case, the Unification Church sought to engage in a campaign of "literature evangelism" in which members of the church were to go from door to door speaking with local residents about religious matters, distributing church literature, and soliciting donations. They were informed, however, that a Cheyenne City ordinance—identical with the ordinances in the instant case—prohibited their activities. The church members thereupon sought injunctive and declaratory relief, and Judge Brimmer held that the solicitation activities of the Unification Church were non-commercial in nature; that the ordinance was being applied without distinguishing between commercial and non-commercial activity; and that the ordinance as applied to the Unification Church was therefore constitutionally invalid.

■ Thus, as applied to religious solicitation, the Grants and Los Alamos Ordinances are constitutionally invalid. As applied to commercial solicitation, however, the ordinances are valid. In *Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1950) the Supreme Court held that a Green River Ordinance similar in all material respects to those in the instant case, was constitutionally valid when applied to prohibit commercial door to door solicitation. Likewise, in *Green River v. Fuller Brush*, 65 F.2d 112 (10th Cir. 1933) the Tenth Circuit upheld a similar ordinance under similar circumstances.

■ In summary, then, the Los Alamos and Grants ordinances are invalid as applied to religious solicitation but valid as applied to commercial solicitation. And if the issue before this Court on this present motion for summary judgment were whether the ordinances are valid as applied to plaintiffs' proposed activities, the remaining question would be whether plaintiffs' proposed activities were commercial or non-commercial according to the test set out in *Murdock v. Pennsylvania*, 319 U.S. 105, 110, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) and *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Counsel*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). *See* also *Love v. Mayor of Cheyenne, supra.* Such is not the issue, however. Presently this Court may only determine whether the ordinances are invalid on their face. But since they are valid as applied to some situations and invalid as applied to others, it cannot be said that the ordinances are invalid on their face.

Defendant County of Los Alamos argues, in a separately filed motion to dismiss, that the action should be dismissed because the Los Alamos ordinance does not apply to religious solicitation, and never has been applied to religious solicitation. *See, Tate v. Akers*, 409 F.Supp. 978 (D.Wyo.1976) *affd.*, 565 F.2d 1166 (10th Cir. 1977).

■ The argument misses the mark. If Los Alamos does not intend to apply its ordinance against religious solicitation, then this Court is left to wonder why Los Alamos objects to a judicial decree by this Court to that very effect. More importantly, however, plaintiffs cannot be required to guess at the meaning and application of the Los Alamos and Grants ordinances, *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620–621, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976), and their standing to obtain a judicial determination of their First Amendment rights under the ordinances is unquestioned. *Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1964); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1968).

■ Defendant City of Grants' argument that the action should be dismissed because the Grants Ordinance only prohibits door to door solicitation by those who have not been invited by homeowners, is frivolous and was refuted forty years ago by well established Supreme Court authority. *E.g. Martin v. Struthers*, 319 U.S. 141, 145–149, 63 S.Ct. 862, 87 L.Ed. 1313 (1942); *Schneider v. State*, 308 U.S. 147, 163–165, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

## THE ALAMOGORDO ORDINANCE

Pertinent sections of the Alamogordo City Ordinance read as follows:

*6–6–1: (Solicitations) Peddlers Prohibited*:

(A) Definitions.

1. "Solicitations" shall mean the going in or upon one or more private residences of the City of Alamogordo by any person not having been requested or invited to do so by the owner or owners, or occupants thereof, for the purpose of soliciting orders for the sale of goods, wares, merchandise, or any article or thing of whatsoever description intended for the use or benefit of the recipient thereof, property either real or personal, tangible or intangible, or services or for the purpose of peddling or hawking any of the same, or for the purpose of making or requesting appointments or procuring interviews or arranging for demonstrations or explanations preliminary to any actual solicitation of orders, selling, peddling or hawking of any of the same.

\* \* \* \* \* \*

5. "Religious" shall mean having to do with all forms of belief in the existence of superior beings exercising power over human beings by violation, imposing rules of conduct, with future rewards and punishments.

(B) Nuisance Declared. It shall be unlawful for any person to go in or upon any private residence of the City of Alamogordo for the purpose of solicitations.

\* \* \* \* \* \*

*Section 6–6–1(C)—Exceptions:*

The provisions of this section shall not apply to any person desiring to solicit for charitable or religious purposes; provided that said person's charitable or religious organization has obtained a permit from the City Manager prior to the time the soliciting is to begin.

\* \* \* \* \* \*

*Section 6–6–1(D)—Permit Required:*

It shall be mandatory for any charitable or religious organization desiring to solicit for charitable or religious purposes in the City of Alamogordo to obtain a solicitation permit. A representative of the organization must present before the City Manager (at least five (5) days before the solicitations are to begin), valid proof of the legitimacy of the cause for which his organization wishes to solicit. The City Manager shall decide the period of time for which solicitations may be made. The City Manager may in his discretion refer any such application to the City Commission for approval. Upon approval of the City Commission the organization must obtain from the City Manager a solicitation permit, setting forth the dates of solicitation allowed by the City Commission.

The Alamogordo Ordinance is similar to the Grants and Los Alamos Ordinances; it prohibits door to door solicitation. It differs in one significant respect, however; it exempts persons soliciting donations for charitable purposes, provided such persons have first obtained a permit from the City Manager who has the discretion to 1) deny the permit, 2) grant it upon proof of the legitimacy of the cause for which the persons wish to solicit, or 3) refer the application to the City Commission which, in turn, has discretion to deny or grant the permit.

■■■ The constitutional validity of this provision might be argued under the well recognized principle that a municipality has the power to enforce reasonable door to door soliciting and canvassing regulations to protect its citizens from crime and undue annoyances; the Supreme Court has consistently recognized that a narrowly drawn ordinance that does not vest in municipal officials the undefined power to determine what residents will hear and see may serve these interests consistent with the First Amendment. *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1975).

■ Nevertheless, the permit scheme outlined above is not sufficiently narrowly drawn to survive the requirements of the First and Fourteenth Amendments. This conclusion is mandated by *Schneider v. State,* 308 U.S. 147, 158, 60 S.Ct. 146, 84 L.Ed. 155 (1939) and *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1939).

In *Cantwell, supra,* the Supreme Court held that a statute forbidding religious solicitation unless a permit had first been procured from a designated official, who was required to determine whether the cause was a religious one and who could withhold his approval if he determined that it was not, was a previous restraint upon the free exercise of religion and a deprivation of liberty without Due Process of Law in violation of the Fourteenth Amendment.

The applicability of the *Cantwell* holding to the facts of the instant case is established by noting the gist of the Court's opinion at 306–307, 60 S.Ct. at 904–905:

Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public. Certainly penal laws are available to punish such conduct. Even the exercise of religion

may be at some slight inconvenience in order that the state may protect its citizens from injury. Without doubt a state may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent. The state is likewise free to regulate the time and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience. But to condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution.

The Alamogordo Ordinance does not simply regulate the time and manner of solicitation generally in the interest of public safety, peace, comfort or convenience; nor does it merely attempt to protect its citizens from fraudulent solicitation by requiring a stranger to establish his identity and authority to act for the cause which he purports to represent; rather, it conditions the plaintiffs' solicitation of aid upon the determination by state authority as to what is a religious cause. And such a condition lays a forbidden burden upon the exercise of First Amendment liberties.

In *Schneider, supra,* a municipal ordinance prohibited solicitation by canvassing from house to house unless the canvasser received a written permit from the Chief of Police. The Supreme Court held the ordinance unconstitutional as applied to one who delivered literature and solicited contributions from house to house in the name of religion. The Court said 308 U.S. at 164, 60 S.Ct. at 152:

Conceding [the] fraudulent appeals may be made in the name of charity and religion, we hold a municipality cannot, for this reason, require all who wish to disseminate ideas to present them first to police authorities for their consideration and approval, with a discretion in the police to say some ideas may, while others may not, be carried to the homes of citizens; some persons may, while others may not, disseminate information from house to house. Frauds may be denounced as offenses and punished by law. Trespasses may similarly be forbidden. If it is said that these means are less efficient and convenient than bestowal of power on police authorities to decide what information may be disseminated from house to house, and who may impart the information, the answer is that considerations of this sort do not empower a municipality to abridge freedom of speech and press.

The Alamogordo Ordinance gives the City Manager and City Commission discretion to say some ideas may, while others may not, be carried to the homes of citizens. Accordingly, the ordinance is an invalid prior restraint.

In *Cantwell* and *Schneider* the Court held the respective permit requirements to be invalid prior restraints as applied to religious solicitation. And since both cases involved completed criminal prosecutions and a record from which the Court could adjudicate the constitutionality of the ordinances as applied, the Court did not discuss whether the ordinances were invalid on their face. Nevertheless, in other analogous situations the Court has held that ordinances, such as those in *Cantwell, Schneider* and the instant case, which predicate the enjoyment of constitutionally guaranteed freedoms of speech upon the discretion of municipal officials, are unconstitutional prior restraints invalid on their face. *Lovell v. Griffin,* 303 U.S. 444, 451, 58 S.Ct. 666, 82 L.Ed. 949 (1937); *Jones v. Opelika,* 316 U.S. 584, 602–603, 62 S.Ct. 1231, 86 L.Ed. 1691 (1941) (dissenting opinion later adopted as the opinion of the Court in 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290); *Staub v. City of Baxley,* 355 U.S. 313, 321–325, 78 S.Ct. 277, 2 L.Ed.2d 302 (1957). Accordingly, this Court likewise concludes that the Alamo-

gordo Ordinance is a prior restraint invalid on its face.[3]

■ The city is not without remedy. As already noted in *Schneider, supra,* frauds may be denounced as offenses punished by law; and trespasses may similarly be forbidden, but not in a manner treading on First Amendment rights. This principle was more fully discussed in *Martin v. Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1942) in which the Court said at 145–149, 63 S.Ct. at 864–866:

> While door to door distributers of literature may be either a nuisance or a blind for criminal activities, they may also be useful members of society engaged in dissemination of ideas in accordance with the best tradition of free discussion. The widespread use of this method of communication by many groups espousing various causes attests its major importance. "Pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people." *Schneider v. State, supra,* [308 U.S.], 164 [60 S.Ct. 152, 84 L.Ed. 155] . . . . Door to door distribution of circulars is essential to the poorly financed causes of little people.
>
> Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved. The dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the

Constitution, the naked restriction of the dissemination of ideas.

> Traditionally the American law punishes persons who enter onto the property of another after having been warned by the owner to keep off. General trespass after warning statutes exist in at least twenty states, while similar statutes of narrower scope are on the books of at least twelve states more.
>
> \* \* \* \* \* \*
>
> This or any similar regulation leaves the decision as to whether distributers of literature may lawfully call at a home where it belongs—with the homeowner himself. A city can punish those who call at a home in defiance of the previously expressed will of the occupant and, in addition, can by identification devices control the abuse of the privilege by criminals posing as canvassers. In any case the problem must be worked out by each community for itself with due respect for the constitutional rights of those desiring to distribute literature and those desiring to receive it, as well as those who choose to exclude such distributers from the home.

■ Defendant Alamogordo argues, and has submitted affidavits to the effect, that the ordinance is valid because the City Manager only has discretion to, 1) grant the license, 2) deny it only if the solicitors cannot prove they represent the cause they claim to represent, or 3) refer it to the City Commission. The argument fails for two reasons: First, the City Commission still has an unbridled discretion to grant or deny the application, and the City Commission is no more authorized to exercise such discretion than the City Manager. *E.g. Cantwell v. Connecticut, supra.* Secondly, and more importantly, the ordinance is at best vague regarding the amount of discretion given

---

3. Having concluded that the ordinance does not meet the requirements for falling within one of the narrowly drawn exceptions to the prohibition against prior restraints, *see Hynes v. Mayor of Oradell, supra*; *Southeastern Promotions Inc. v. Conrad,* 420 U.S. 546, 548, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1974); *Shuttlesworth v. Birmingham, supra,* 308 U.S. at 150–151, 89 S.Ct.

935, the Court need not reach plaintiffs' second contention that the ordinance, in any event, does not survive the Procedural Due Process requirements of *Freedman v. Maryland,* 380 U.S. 51, 58–60, 85 S.Ct. 734, 13 L.Ed.2d 649 (1964). *See also Southeastern Promotions Inc. v. Conrad, supra,* 420 U.S. at 558, 95 S.Ct. 1239.

the City Manager, and plaintiffs cannot be required to guess at the meaning and application of the ordinance. *Hynes v. Mayor of Oradell, supra,* 425 U.S. at 620–621, 97 S.Ct. 1755. Nor must they await a change in the Alamogordo City fathers' interpretation of the ordinance, and thereby suffer a criminal prosecution, before they have standing to obtain a judicial determination of their rights. *Freedman v. Maryland, supra; Shuttlesworth v. Birmingham, supra.*

■ Defendant Alamogordo also argues that this Court is barred from issuing an injunctive decree because of the doctrine of Abstention announced in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* doctrine, however, has no application to the instant case because no prosecutions are presently pending. *Wooley v. Maynard,* 431 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Doran v. Salem Inn Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

This Court need not, however, strike the entire Alamogordo Ordinance. Section 6–6–1(E) reads in material part as follows:

*Separability.* If any provision of this Ordinance is found by a Court of competent jurisdiction to be invalid or unconstitutional, or if the application of this Ordinance to any person or circumstances is found to be invalid or unconstitutional, such invalidity or unconstitutionality shall not affect the other provisions or applications of this Ordinance which can be given effect without the invalid or unconstitutional provision or application.

Thus, the Court will enter an order striking only §§ 6–6–1(C) and 6–6–1(D) of the Criminal Code of the City of Alamogordo. Moreover, since the remaining sections are similar in all material respects to the Grants and Los Alamos Ordinances, the issue of their applicability to plaintiffs' proposed activities will likewise be determined at trial under the same standards. *See,* discussion at page five, *supra.*

In summary, the Grants, Los Alamos and Alamogordo Ordinances are invalid as applied to religious solicitation, but the nature of plaintiffs' proposed activities and the application of the ordinances to those activities are issues to be determined at trial. The exceptions in the Alamogordo Ordinance for religious and charitable solicitation provided a permit has been obtained, however, are void on their face.

ACCORDINGLY, NOW THEREFORE, IT IS BY THE COURT ORDERED that Sections 6–6–1(C) and 6–6–1(D) of the Alamogordo City Criminal Code are unconstitutional on their face, in violation of the First and Fourteenth Amendments to the United States Constitution, and they are hereby declared to be null, void, and enforcement thereof shall be, and is hereby, forever enjoined.