William TAYLOR, on his behalf and on behalf of all others similarly situated

v.

CITY OF KNOXVILLE, a municipal corporation, Robert A. Marshall, Chief of Police of the City of Knoxville; Jon Roach, Director of Law for the City of Knoxville, Richard Tumblin, Secretary, City of Knoxville Solicitations Board; Lillian Zion, Jack Riley and Stan Emert, Jr., Members of the City of Knoxville Solicitations Board, individually and in their official capacities.

Civ. No. 3–82–196.

United States District Court, E.D. Tennessee, N.D.

April 12, 1982.

On Motion for Permanent Injunction May 25, 1983.

Cecile Singer, Edward T. Stein, Chicago, Ill., Dean Hill Rivkin, Knóxville, Tenn., for plaintiff.

Jon Roach, City Atty., P. Douglas Morrison, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

In this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202 plaintiff William Taylor seeks to have Ordinance No. 6232 of the City of Knoxville declared unconstitutional and its enforcement enjoined. Plaintiff also seeks damages. Plaintiff is a member of the Holy Spirit Association for the Unification of World Christianity (Church). Defendants are the City of Knoxville and certain of its officials.

The case is before the Court on plaintiff's motion for a preliminary injunction. Plaintiff has submitted an affidavit in support of his motion. A hearing on the preliminary injunction was held on April 9, 1982.

Section 35–2 of Ordinance No. 6232 establishes a Solicitation Board with the following powers:

(a) to issue or refuse the permits or certificates and in the event of a refusal to file a written report explaining the reason for such refusal.

(b) to require applications be filed in all cases required herein.

(c) to compel payment of fees prescribed for permits and to receive the same.

(d) do all things necessarily incidental to securing all permits, applications, certificates, and other forms required herein.

(e) hold hearings as required herein.

(f) to revoke permits or certificates as stated herein.

(g) to publish reports and give any and all publicity to information received by it.

(h) to have access to and inspect books, records and papers of the applicants or anyone making solicitations in the area of the City.

(i) to investigate the methods of making any solicitations.

(j) to aid and assist charitable organizations in scheduling their campaigns to the best interest of the public, but not so as to place any undue hardship on such organization thereby.

(k) to determine in all cases where questions arise specific items in any applicant's fund raising solicitation program which should properly be designated as campaign cost and supplemental expenses, and the uniform accounting practices in accordance with these standards. Accounting and financial reporting for voluntary health and welfare organizations will be mandatory.

(*l*) to adopt such rules and regulations as are necessary and are not contrary to this Ordinance.

Section 35–16 prohibits religious solicitations without a certificate from the Board. The section provides, in pertinent part, as follows:

Application for a certificate shall be made to the Board upon forms provided by the City of Knoxville. Such application shall be sworn to, or affirmed, and shall contain information required in Section 35–5, except such application shall not contain the statement required in Subsection 35–5(m) or, in lieu thereof, a statement of the reason or reasons why such information cannot be furnished.

If while any application is pending, or during the term of any certificate granted thereon, there is any change in facts, policy, or method that will alter the information given in the application, the applicant shall notify the Board in writing thereof within seventy-two (72) hours of such a change.

Upon receipt of such application, the Board shall forthwith issue the applicant a certificate of registration. The certificate shall remain in full force and effect for a period of six (6) months after the

issuance thereof, and shall be renewed upon the expiration of this period upon the filing of a new application as provided for in this Section. Such certificates are non-transferable, and the original and all facsimile thereof shall be returned to the Board within one (1) week after the date of expiration of the solicitation. . . . Provided, however, that the provisions of this Section shall not apply to any established person organized and operating exclusively for religious purposes and not operating for pecuniary profit of any person if the solicitations by such an established person are conducted among members thereof by other members or officers thereof, voluntarily and without remuneration for making such solicitations, or if the solicitations are in the form of collections or contributions at regular assemblies or services of any such established person.

Section 35-5 provides, in pertinent part, that:

The application herein required shall contain the following information, or in lieu thereof, a detailed statement of the reason or reasons why such information can not be furnished:

(a) The name, address or headquarters of the person applying for the permits:

(b) If the applicant is not an individual, the names and addresses of the applicant's principal officers and managers and a copy of the resolution, if any, authorizing such solicitation, certified to be a true and correct copy of the original by the officer having charge of the applicant's records;

(c) The purpose for which such solicitation is to be made, the total amount of funds proposed to be raised thereby, and the use or disposition to be made of any receipts therefrom;

(d) A specific statement, supported by reasons and, if available, figures, showing the need for the contributions to be solicited;

(e) The names and addresses of the person or persons who have authority to distribute funds;

(f) The names and addresses of the person or persons who will be in direct charge of conducting the solicitation and the names of all professional solicitors connected or to be connected with the proposed solicitation;

(g) An outline of the method or methods to be used in conducting the solicitations;

(h) At the time when such solicitations shall be made, giving the preferred dates for the beginning and the ending of such solicitation;

(i) The estimated cost of the solicitation;

(j) The amount of any wages, fees, commissions, expenses or emoluments to be expended or paid to any person in connection with such solicitations, and the names and addresses of all such persons;

(k) A financial statement for the last preceding fiscal year of any funds collected for charitable purposes by the applicant, said statement giving the amount of money so raised, together with the cost of raising it, and the final distribution thereof to be prepared by a certified public accountant, a licensed public accountant and filed in the Recorder's Office;

(*l*) A full statement of the character and extent of the charitable work being done by the applicant within the area of the City;

(m) A statement that the actual cost of the solicitation will not exceed twenty-five (25%) percent of the total amount to be raised; or in the event the cost will exceed twenty-five (25%) percent, a statement as to the reasons;

(n) A statement to the effect that if a permit is granted, it will not be used or represented in any way as an endorsement by the City of Knoxville, or by any department or officer thereof;

(*o*) Such other information as may be reasonably required by the Board or by the Director for either to determine the kind and character of the proposed solicitation and whether such solicitation is in the interest of, and not inimical to, the public welfare.

Under section 35–17 the Board has additional authority to investigate religious applicants:

The Board is authorized to investigate the affairs of any person soliciting for religious purposes under a certificate issued under Section 35–16 ..., and to make public their findings in order that the public may be fully informed as to the affairs of any said person. Said persons shall make available to the Board, the Director of Law, or to any representative designated by the Board in writing for such specific purpose, all books, records, or other information reasonably necessary to enable the Board to fully and fairly inform the public of all facts necessary to a full understanding by the public of the work and methods of operation of such persons; provided, that five (5) days before the public release of any findings under this Section, the Board must first serve a copy of its findings upon the person investigated and at the time of the release of its findings, it must release a copy of any written statement said person may file with the Board in explanation, denial, or confirmation of said findings.

Judicial review of the Board's action is provided in section 35–19:

The action of the board in connection with the issuance of a permit of any kind, including the revocation of a permit may be reviewed by the statutory writ of certiorari with the trial de novo as a substitute for an appeal, said writ of certiorari to be addressed to the Circuit or Chancery Court of Knox County.

Immediately upon the grant of the writ of certiorari the Board shall cause to be made, certified and forwarded to said Court, a complete transcript of the proceedings in said Court.

Provided, further, the provisions of this Section shall be the sole remedy and exclusive method for review of any action or order of the Board. Any party dissatisfied with the decree of the Court may, upon giving bond as required in other cases, appeal to the Supreme Court, where the cause shall be heard upon the transcript and records from the Circuit Court.

Plaintiff challenges Ordinance No. 6232 on essentially three grounds: That the ordinance gives the Board discretion to grant or deny certificates without narrow and objective standards to guide the Board; that the ordinance fails to provide due process safeguards for individuals whose applications are denied; and that the ordinance excessively entangles government in the affairs of religion.

In order to justify the issuance of a preliminary injunction, the Court must determine:

(1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

(2) Whether the plaintiffs have shown irreparable injury;

(3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

(4) Whether the public interest would be served by issuing a preliminary injunction. *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256, 261 (1977).

The principles of law applicable to this case are well settled. The solicitation of funds for religious purposes is protected by the First Amendment. *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). Any law restricting the exercise of such rights must do so with narrow, objective and definite standards. *Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). If a certificate is required for one to solicit funds for religious purposes, the discretion of the official granting the certificate must be bounded by explicit standards. If the decision to issue the certificate "involves appraisal of facts, the exercise of judgment, and the formation of an opinion" the ordinance violates the First Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 305, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1940). Ambiguities in the application process which give the licensing official effective power to

grant or deny permission to solicit funds for religious purposes is likewise unconstitutional. *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976). In other words, it is not enough that an official is directed to issue the license forthwith; if the official may deny the application because of unclear requirements in the application process, the law is unconstitutional. Laws allowing an investigation into the financial affairs of religious institutions have been held unconstitutional as an impermissible entanglement of the affairs of church and state. *Surinach v. Pesquera de Busquets,* 604 F.2d 73 (1st Cir.1979). Finally, any prior restraint on the exercise of First Amendment freedoms must be accompanied by procedural safeguards designed to obviate the dangers of prior restraint. *See Freedman v. Maryland,* 380 U.S. 51, 58–59, 85 S.Ct. 734, 738–739, 13 L.Ed.2d 649 (1965).

■ In the opinion of the Court, a preliminary injunction should issue. Measuring Ordinance No. 6232 by the principles outlined above, we conclude that plaintiff has shown a substantial likelihood or probability of success on the merits. We also conclude that plaintiff has demonstrated irreparable harm. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). We conclude further that no substantial harm will be caused to others and that the public interest will be served by issuance of a preliminary injunction.

■ The Court is sympathetic to the City's effort to protect the public against fraud in the solicitation of funds. "Without doubt a State [or city] may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent (footnote omitted)," *Cantwell v. Connecticut, supra,* 310 U.S. at 306, 60 S.Ct. at 904, so long as the identification requirement is definite, leaving no discretion in the official issuing the certificate. *Hynes v. Mayor of Oradell, supra.* A city may also place reasonable time, place

and manner restrictions on religious solicitations. *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).

The parties will prepare and submit to the Clerk an appropriate order enjoining the enforcement of Ordinance No. 6232 insofar as it relates to solicitation of funds for religious purposes.

### ON MOTION FOR PERMANENT INJUNCTION

This is an action brought by plaintiff William Taylor to enjoin the enforcement of Ordinance No. 6232 of the City of Knoxville, which he says is unconstitutional. Plaintiff is a member of the Holy Spirit Association for the Unification of World Christianity. The City of Knoxville is the only defendant against which relief is sought at this time. The Court on April 12, 1982 granted a preliminary injunction against the enforcement of the then existing ordinance. Plaintiff now seeks an order permanently enjoining the enforcement of the ordinance currently in effect, Ordinance No. 0–135–82.

Since the case was originally brought, the City amended Ordinance No. 6232. The new ordinance continues to provide for the establishment of a Solicitation Board with substantial powers as set forth in section 35–3. The City made substantive changes in subsections (h) through (k), granting authority to the Board,

(h) To have access to and inspect books, records and papers of persons holding permits or anyone making solicitations within the City, upon a finding by the Board that probable cause exists to believe that persons have engaged in fraudulent or other illegal activities;

(i) To investigate the methods of making any solicitations upon a finding by the Board that probably (sic) cause exists to believe that such methods are fraudulent or otherwise illegal;

(j) To offer aid and assistance to charitable organizations in scheduling their

campaigns to the best interest of the public, but not to require that charitable organizations follow or accept this aid or assistance;

(k) To adopt such rules and regulations as are necessary and not contrary to this chapter or general law.

New section 36–16 provides:

No person shall solicit contributions for any religious purpose within the City of Knoxville without a permit from the Board issued in the same manner as any other permit.

Section 35–16 exempts certain "established" persons from the Board's application procedures if the established person is,

organized and operating exclusively for religious purposes . . . if the solicitation . . . are (sic) conducted among members thereof or by other members or officers thereof, voluntarily and without remuneration, for making such solicitations, or if the solicitations are in the form of collections or contributions at regular assembly or services of any established person.

Section 35–6 of the ordinance outlines the information that applicants for permits must provide in their applications. Religious organizations are no longer required to furnish a financial statement to qualify for permits. Applicants must still furnish a statement of the "purpose" for which the solicitation is made. Subsection (h) requires submission of:

Such other information as may be reasonably required by the Board or by the Director in furtherance of the duties of the Board or Director under this chapter and consistent with general law.

The Board is directed to issue permits pursuant to Section 35–8 after making the following findings:

a. All of the statements made in the application are true.

b. The applicant has not engaged in any fraudulent transactions or enterprise.

c. Solicitation will not be a fraud on the public.

d. The solicitation is not being conducted primarily for private profit.

e. No person shall be granted a solicitations permit who is not qualified as a non-profit, tax exempt person or organization under the applicable sections of the Internal Revenue Code of 1954, as amended, and/or such other criteria or standards as prescribed by the Board, and/or has qualified as a non-profit, tax exempt person or organization, under the laws of Tennessee or similar laws of another state.

f. No person shall be granted a solicitations permit who fails or refuses to file any report required by this chapter, or the regulations promulgated pursuant thereto.

Section 35–12 continues to provide for a public evidentiary hearing if requested after a permit application is denied. Judicial review of the post-hearing decision is made available by section 35–19.

The ordinance continues to grant broad investigatory authority to the Board and City Law Director. Section 35–7 provides:

Whenever complaints have been brought to the attention of the Board or upon its authority, and after a finding by the Board that probable cause exists to believe the holders of permits have committed fraudulent or other illegal activities the Board shall conduct such further investigations as it deems necessary in order to insure that the purposes and provisions of this article are being met. Upon request by the Board, the applicant shall make available for inspection all the applicant's books, records and papers at any reasonable time before the application is granted, during a time a permit is in effect, or after the permit is expired. The Director of Law, or persons designated by him to do so, may conduct any investigations into the applicant for a solicitations permit when it appears to said Director, or in response to complaints made known to the Director, that any of the provisions of this chapter are being violated or the applicant or holder of such permit has engaged or is engaging in

unscrupulous, dishonest, fraudulent or misleading practices in connection with the solicitations of contributions.

■ The City has deleted many of the offensive provisions of Ordinance 6232. In particular, the sections requiring financial reporting and disclosures by religious organizations have been omitted. Plaintiff, however, continues to challenge the amended ordinance on grounds previously raised. He says the ordinance contains inadequate procedural safeguards and grants unbridled discretion to the licensing Board to deny permits. He also says the ordinance unconstitutionally favors certain denominations over others in allowing exemptions from permit requirements. The Court is of the opinion that Ordinance No. 0–133–82 is unconstitutional on its face, as it suffers from many of the same defects as its predecessor as it applies to religious organizations.

The Board's denial of a permit is not preceded by a hearing or other procedural safeguards required when First Amendment rights are involved. *See Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). The availability of a post-denial judicial remedy is inadequate, since the system remains one of previous restraint which has been held "inadmissible." *See Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

Further, the discretion of the Board to deny permits pursuant to section 35–8 and grant exemptions for "established" persons pursuant to section 35–16 violates the requirement that the ordinance contain "narrow, objective, and definite standards to guide the licensing authority." *Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). The Board's function, therefore, exceeds the ministerial role contemplated by the Supreme Court in *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213; *see also International Society for Krishna Consciousness of Berkeley, Inc. v. Kearnes,* 454 F.Supp. 116 (E.D.Cal.1978). Even though the application process has been simplified, the specific requirements remain ambiguous and subject to alteration by the Board.

Consequently, the City may not apply the ordinance to solicitations of funds for religious purposes. *See Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976).

As the preceding discussion is determinative of the case, it is not necessary that the Court address plaintiff's Establishment Clause argument at this time.

The City of Knoxville has not yet answered the amended complaint. During the last hearing on this matter, however, it represented in good faith that it would rectify the defects in Ordinance No. 0–133–82. Accordingly, the Court is of the opinion that final relief is justified at this time. It is, therefore, ORDERED that defendant be, and the same hereby is, permanently enjoined from enforcing Ordinance No. 0–133–82 insofar as it relates to the solicitation of funds for religious purposes.

Order Accordingly.