**815 FOXON ROAD, INC.**

v.

**TOWN OF EAST HAVEN, CONNECTICUT, Sarravich Minaka, Individually and as Zoning Enforcement Officer, and Joseph Pascarella, Individually and as Chief of Police.**

Civ. No. N–84–374 (PCD).

United States District Court,
D. Connecticut.

April 11, 1985.

---

2. The plaintiff has not argued that the exceptions to D.R. 5–101(B) and D.R. 5–102(A) are applicable to this case.

Daniel A. Silver, Pudlin & Silver, New Britain, Conn., for plaintiff.

Michael A. Albis, East Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

DORSEY, District Judge.

Plaintiff, relying on 42 U.S.C. § 1983, 28 U.S.C. § 1343, and 28 U.S.C. § 2201, seeks a declaratory judgment, injunctive relief and damages on the basis that certain zoning regulations promulgated by the defendant Town of East Haven (Town) are unconstitutional on their face and as applied to plaintiff. Jurisdiction is found.

The parties were heard. For the following reasons, and in the following respects, judgment shall enter for the plaintiff.

*Facts*

1. Plaintiff operates a commercial enterprise in leased premises at 815 Foxon Road, East Haven, Connecticut.

2. In addition to the sale of books and magazines, plaintiff exhibits films, largely consisting of sexually explicit material, in booths for one or two customers.

3. Defendant Town is a Connecticut municipal corporation.

4. Defendant Sarravich Minakan (Minakan) is the zoning officer of the Town.

5. Defendant Joseph Pascarella (Pascarella) is the Chief of Police of the Town.

6. The Town adopted zoning regulations on October 24, 1966, and amended same on December 21, 1977, and May 23, 1984, therein permitting the use of premises for exhibition of films in movie booth centers (MBC) only in CA–2 zoning districts, one of five commercial districts recognized and defined by regulation as areas "that have been growing, many over a long period of time, as retail and office sites providing a variety of commercial services for the community."

7. The regulations permit an MBC in CA–2 districts upon the issuance of a permit after a site plan approval.

8. Plaintiff has not sought nor obtained an MBC permit.

9. Enforcement of the zoning regulations by the zoning officer and Chief of Police is threatened in the form of penalties and a discontinuance order.

10. The May 23, 1984, amendment added, as to premises to be used for individual film exhibitions:

(a) An off-street parking requirement of one car for each viewing device.

(b) The requirement of a site plan approval.

11. Theatres are permitted in CA-1, CA-2, CB-1 and CB-2 zones.

12. The regulations applicable to film exhibitions are content neutral, i.e. they make no reference to the content of the films exhibited.

13. Prior to May 23, 1984, MBCs were prohibited under the regulations. That prohibition was invalidated on constitutional grounds by Judge Burns on May 15, 1984, in Civil N-83-575, *815 Foxon Road, Inc. v. Town of East Haven, et al.*

14. On May 23, 1984, MBCs became a permitted use subject to the limitations discussed herein.

15. The Town Planning and Zoning Commission adopted the May 23, 1984, amendments as a tempered response to the perceived view of the public that such use not be permitted in any location.

16. CA-2 zones are essentially for commercial use, business and offices as are CA-1 zones, and, with the addition of automotive sales and services, as are CB zones. CC zones, except for density appear also to be commercial zones.

17. There are four CA-2 zones in different parts of Town.

18. An MBC is not permitted on a CA-2 district lot which abuts a residential zone to avoid "direct impact on a residential area" by setting some arbitrary distance requirement. Testimony of Anthony Panico, the Town's Planning Consultant, Transcript at 10). *See* Amendment of May 23, 1984, Schedule A, Section 24, ¶ 36(A).[1]

19. Plaintiff's premises is located in a CA-2 zone. Its film business would not be permitted there because those premises abut residential property.

20. A 200' minimum distance to residential property would result in the prohibition of any CA-2 land in the Town being used for MBCs.

21. The parking ratio applied to theatres is not applied to MBCs as theatre attendees are seen as traveling in groups. One space per booth allows for waiting customers at MBCs. There was no evidence as to the parking spaces available on the lot occupied by the plaintiff. Theatres are required to provide one parking space for each four seats.

22. No particular provisions are applicable to site plan approval for MBC use as opposed to any other site plan approval.

23. Within the four CA-2 zones, there are ten lots on which MBCs are permitted, all in one of the four zones. No further identification of these lots, their present use, nor their availability for use as MBCs is reflected in the record.

24. Zoning district locations may be changed on petition.

*Discussion*

Plaintiff claims the regulations on their face and as applied to its business violate the first and fourteenth amendments. Specifically, plaintiff claims that: (1) the exercise of its rights is lost or diminished without due process by reason of the requirement of a site plan approval; (2) its right to carry on its business is subjected to unequal restrictions; and (3) the right to protected speech is facially chilled, restricted and infringed by the restriction of permissible locations for business such as plaintiff's.

A.

■ The due process claim is without merit. Defendant's regulations are enforced by a site plan approval. This is largely a documentation procedure. The

1. Paragraph 36(A) has other distance requirements that pertain to MBCs in relation to churches or their affiliated structures, school or educational facilities, day nurseries, places at which alcoholic beverages are sold or on premises for consumption, and other movie booth centers.

regulation specifies the form and content of the documents required and the procedure to be followed. *See* Section 33, Exhibit A. If met, the standards require approval, thereby enforcing the zoning requirements. *See* Conn.Gen.Stat. § 8–3(g). The standards are uniformly applicable and provide no singular requirements for MBCs. Plaintiff suggests that because it is exercising a first amendment right, it should be subject to no prior restraints on the location of that exercise. Yet plaintiff concedes the Town's right to control land use by zoning regulations. Plaintiff's Memorandum, June 27, 1984, at 10. Site plan approval insures compliance with that control. Since a town may regulate "the place where such films may be exhibited [without offending] the First Amendment," *Young v. American Mini Theatres,* 427 U.S. 50, 63, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976), a method of exercising that right (site plan approval) is not an unlawful restraint on the first amendment right.

### B.

■ The equal protection claim, as it pertains to parking, is likewise without merit. Plaintiff claims that the requirement on theatres, one off-street parking space for each four seats, Exhibit A, Section 42.5.4, constitutes unequal treatment without rationale. The Planning and Zoning Commission's determination that patrons of MBCs would be more likely to attend singly while theatre attendees would be more likely to attend singly while theatre attendees would be more likely to attend in groups, is not refuted in the record. A theatre is not necessarily always, nor substantially always, fully occupied. There was no evidence of any test of actual seating use in theatres. An MBC appears to be a smaller operation than theatres. MBCs are defined as an establishment where the film viewing is "by a single individual or by a group of two persons." Exhibit A, Section 4.28. The contemplation of a waiting line of customers and a high volume of use of the booths prompted the requirement of a parking space for each exhibition machine. There is no evidence to suggest that that contemplation is erroneous or unfounded.

The orderly conduct of business, provision for traffic flow, and minimization of intrusion on adjacent property users vindicates off-street parking requirements as a proper exercise of power in relation to a legitimate government purpose. As the requirement on MBCs is not clearly unwarranted, for those purposes, it cannot be said that the requirement is unreasonable as a means to accomplish a proper governmental purpose, nor so restrictive in relation to the requirements of another comparable use, i.e. theatres, as to be deemed violative of the equal protection clause.

### C.

■ Defendants claim that plaintiff is without standing to challenge the constitutionality of the regulations. Plaintiff, no stranger to the regulations, is presently located where they would not permit the use. As an operator of the use in question, on land where the use would not be permitted under the regulations and presently threatened by penalties and shutdown, plaintiff enjoys sufficient standing to challenge the regulations both as applied and facially. *See, e.g., Secretary of State v. Munson,* —— U.S. ——, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Broadrick v. Oklahoma,* 413 U.S. 601, 612–13, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973) (noting the Supreme Court's "departure" from traditional standing rules in first amendment facial overbreadth challenges).

The Town has the authority to enact zoning regulations for the benefit of the community for the purpose of "achieving a satisfactory quality of life." *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). However, those legitimate interests must be protected "by narrowly drawn regulations ... without unnecessarily interfering with First Amendment freedoms." *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980); *Buckley v. Valeo,* 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976); *see Hynes v. Mayor of Oradell,* 425 U.S. 610, 620, 96 S.Ct. 1755,

1760, 48 L.Ed.2d 243 (1975); *First Nat'l Bank v. Vellotti,* 435 U.S. 765, 786, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978). "Broad prophylactic rules ... are suspect. Precision of regulation must be the touchstone." *NAACP v. Buttons,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963).

■■ To determine whether the zoning regulations challenged here accomplishes legitimate purposes, *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968), without intruding unnecessarily on the rights of plaintiff or others potentially caused by the statute to refrain from constitutionally protected speech or expression, *Broadrick,* 413 U.S. at 612, 93 S.Ct. at 2916, the regulations must be scrutinized in relation to its terms and purposes, but the determination is made in relation to the right alleged to be infringed. *Thomas v. Collins,* 323 U.S. 516, 529–30, 65 S.Ct. 315, 322, 89 L.Ed.2d 430 (1945). The right to free speech is so inherently vital to full citizenship as to vest one asserting its infringement with standing on the basis of having sustained irreparable injury, unless the restriction is justified as minimally intrusive in pursuit of a legitimate government purpose. Reasonableness requires not only a significant governmental interest, but the preservation of adequate channels for communication. *Schad,* 452 U.S. at 61, 101 S.Ct. at 2179.

■ Municipalities may regulate land use, but they may not regulate the exercise of first amendment rights. *Moore v. City of East Cleveland,* 431 U.S. 494, 514, 97 S.Ct. 1932, 1943, 52 L.Ed.2d 531 (1977). As there held, the zoning regulations are to be assessed in terms of the propriety of the governmental interest exercised and, if those interests are lawful, whether the regulation minimally intrudes on the constitutional right. *Id.* at 499, 97 S.Ct. at 1935. Once a regulation is shown to restrict or chill the exercise of first amendment rights, not only must the interests asserted or protected by the regulation be lawful, but also the regulation must constitute the minimum intrusion on the right necessary to achieve the lawful purpose. A regulation impacting negatively on the exercise of a first amendment right is presumptively invalid. *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). A free flow of ideas is so intrinsically of the essence of this nation's strength, so ultimately the embodiment of individual freedom that its curtailment is allowed only to the extent necessary to accomplish a competing, legitimate governmental purpose.

■ Here, the communication by means of films, individually viewed, is clearly impaired when permitted only in limited locations. The regulations' subject neutrality, i.e. as to the films' content, does not alter the fact that impairment occurs. Indeed, content neutrality is potentially more broadly restrictive, since communication of a broad range of subjects or ideas may thus be restricted. The court is not, of course, blind to the actual films being exhibited. Plaintiff has repeatedly referred to the issue in terms of sexually explicit material or the like. Plaintiff's Memorandum at 9, 16, 20, and Supplemental Memorandum at 2. This court cannot, and does not here, assess the regulations other than on the basis of their neutrality with regard to the content of the films in question. There is nothing in the regulations that requires or even suggests that they are to be applied other than to all individual film exhibitions. Thus, the question is whether there is justification in the asserted governmental purposes for the resultant restraint on the right to speech in the form of exhibition of films to individual viewers. The regulations will not be assessed as plaintiff seeks, that is, as a restraint of the exhibition of sexually explicit material.

■ The right to restrict the location where first amendment rights are exercised has been established. *Young,* 427 U.S. at 61, 96 S.Ct. at 2448. What the regulations accomplish, and what plaintiff challenges, is clearly authorized. "The power of local government to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life ...." *Schad,* 452 U.S. at 68, 101 S.Ct. at 2182. The Town's purpose in the regula-

tions thus is a proper exercise of governmental authority.

■ The question left is whether the Town's method of achieving that purpose is constitutional, i.e. whether the regulation is drawn sufficiently narrowly to avoid unnecessary intrusion on freedom of expression. *United States v. O'Brien*, 391 U.S. at 376–77, 88 S.Ct. at 1679. It is not improper to limit the areas in which such activities are permitted. The degree of restriction is lawful if the interests asserted by the Town could not be served by less intrusive means. Here, two of the restrictions on MBCs are:

(a) The use is not permitted on any lot which is partially in or which is contiguous to residential property.

(b) The use is permitted in only a CA–2 zone.

Limited areas or zones in which the use is permitted and the requirement of space between the use and residential land has been held to be proper. *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310. The first restriction is valid.

The validity of the limitation to the CA–2 zone is determined by whether such a limitation is the means which is least intrusive on plaintiff's constitutional right by which to accomplish the Town's legitimate purpose. The exclusion of the use in question from the eight residential districts is reasonable and logical. The stated design and purposes of the light industry zones, shore development districts, plan development and flood plain districts are likewise not unreasonable bases for exclusion therefrom of MBCs. The locations contemplated by the commercial CB and CC districts, as well as the permitted used therein, are not clearly incompatible with MBCs, but exclusion of such centers is not clearly improper. The CA–2 uses extend to retail and office sites providing a variety of commercial services. A wish to improve the character of the existing development is expressed as well as the need for consistency with intensive use of adjacent residential areas and for off-street parking to be provided by each permitted use. The CA–1 district is intended to encourage, principally in the downtown area of East Haven center, the same uses with greater concentration of retail services and office facilities, including multi-story buildings. Automotive uses are excluded as incompatible as are residential uses. Centralized parking, not necessarily on the lot for each use, is contemplated. The CA–2 zone thus differs only slightly from the CA–1 zone and, except for locations and automotive sales and services, from the CB districts.

Of the seventy-one (71) use categories in the regulations, those most akin to MBCs are:

(a) No. 34—indoor theatres and assembly halls.

(b) No. 35—indoor theatres and assembly halls accessary to permitted uses on the same premises.

Both such uses are permitted in the CA–1, CA–2, CB–1, CB–2 and CC zones, subject to site plan approval. The latter is also permitted in the CD and light industry districts. It might be argued that use No. 43, bowling alleys or pool halls, are not without similarity in use, quality and characteristics to MBCs. Such are permitted uses in the CB–1, CB–2 and CC districts.

While the adopting resolution refers to the CA–2 district as "an appropriate district in which to permit" MBCs as the CA–2 districts are "intended to provide a variety of retail and commercial services," Exhibit A, nothing in the resolution nor in the testimony provides a rationale for why such use is not compatible with the uses and purposes of the other commercial districts. Indeed, while the centers are limited to the CA–2 districts, categories 34 and 35 are not similarly restricted. No evidence was offered as to why the restriction to the CA–2 district is necessary for MBCs and not for theatres and assembly halls. Conversely, there is no rationale offered for why theatres and assembly halls should be permitted in CA–1, CB–1, CB–2 and CC districts while MBCs are not there permitted. There is no apparent conflict between MBCs and the uses or purposes of those other four districts. The testimony ad-

duced no reasons for imposing restrictions other than that the CA–2 zone "permits a wide variety of businesses, office and commercial establishments," (Tr. 9), a comment that equally applies to the CA–1, CB–1, CB–2 and CC zones. CA–1 is noted as having "a tighter lot size" and being found "in a downtown situation," (Tr. 9), but is otherwise not substantially distinguishable from the CA–2 zone. An MBC was likened to theatres generally, yet the Town offered no explanation for why a narrower limit was imposed on MBCs than on theatres. The fact that theatres are more broadly permitted undercuts the justification offered for the restriction of MBCs other than to the same districts in which theatres are permitted.

■ As the restriction on the first amendment right must be as narrow as possible and, as defendants had the burden of justifying the limits imposed, the record fails to show why the permissible locations of MBCs must be more narrowly restricted than the permissible location of theatres. The restrictions on MBCs to CA–2 zones is found to be excessive and not as narrowly or minimally intrusive on the first amendment right as is required. As unduly restrictive, it is unconstitutional as violative of the first amendment.

■ There are restrictions on MBCs which are not imposed on theatres, to wit:

(a) None are allowed within 500 ' of any lot used for churches, parish halls, schools, colleges, universities, hospitals, cemeteries, day nurseries, and educational, religious, philanthropic and charitable institutions.

(b) None are allowed within 500 ' of places selling alcoholic beverages, nor within 200 ' of food service establishments.

(c) None are allowed on lots contiguous to or incorporated in part in residential zones.

(d) None are allowed within 1500 ' of any other such center.

There is no explanation for any of these restrictions other than the testimony pertaining to the residential zone restriction, which has been sustained in *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310, the reasoning of which would equally apply and sanction the restrictions of (a) above also. As these restrictions are not applicable to theatres in general, the attempt to rationalize these restrictions as necessary fails because if they are, or are not, necessary for film exhibition locations, they should likewise be necessary, or unnecessary as the case may be, for all film exhibition locations including theatres. As the restriction of MBCs to the CA–2 zone is unduly restrictive and as the aforesaid restrictions are applied arbitrarily to MBCs as opposed to theatres, to such extent the regulations violate the fourteenth amendment.

*Summary*

The requirement of site plan approval for MBCs and the failure of the regulations to permit such MBCs throughout the Town do not violate the first amendment nor fourteenth amendment due process rights. The prohibitions of Sections 36A(a) and (c) are not violative of first amendment rights, but as the prohibitions of ¶ 36A(a)–(d), Exhibit A, are not equally applied to comparable and indistinguishable uses, to wit, theatres, such restrictions as imposed only on MBCs violate the equal protection rights of the fourteenth amendment. The restriction of MBCs to the CA–2 zone, as not shown to be as narrow a restriction as possible to effectuate the purposes of the zoning regulations, is unduly restrictive of first amendment rights and as not equally applied to theatres must also fall to the equal protection claim in the fourteenth amendment.

·As the Town's zoning regulations are severable, only the provisions thus found to be in conflict with the Constitution are invalid.

The court is not unaware of an underlying consideration of the Town, the wish for insulation against the type of films seemingly to be the only ones likely to attract a clientele to individual movie booths, i.e. sexually explicit material. The fact that the commission acted on the heels of Judge Burns' holding the blanket prohibition unconstitutional and the testimony of the Town officials that they acted in the face of

the wishes of the citizenry to bar such centers completely, cannot be ignored even though the regulations are content neutral. That neutrality does not bar the close scrutiny required of any restriction on first amendment rights. While some citizens, and Town officials in response thereto, may have wished to regulate taste, they may not censor, no matter how distasteful the permitted speech may be to some, if not many. The court cannot permit censorship no matter how laudable may be the taste being exercised. To the extent the regulations are here found to violate the first and fourteenth amendments, they may not be enforced by the Town or any of its officers, agents or employees, nor by defendants Minakan or Pascarella, and they are hereby enjoined therefrom.

Plaintiff has proved no damages and none are thus awarded.

SO ORDERED.