628 A.2d 1094

NEW JERSEY COALITION AGAINST WAR IN THE MIDDLE EAST, SYLVIA ACKELSBERG, AND DAVID CLINE, PLAINTIFFS, v. J.M.B. REALTY CORPORATION, D/B/A RIVERSIDE SQUARE, CHERRY HILL CENTER, INC., D/B/A CHERRY HILL MALL, KRAVCO, INC., D/B/A HAMILTON MALL, PRUTAUB JOINT VENTURE, D/B/A THE MALL AT SHORT HILLS, EQUITY PROPERTIES & DEVELOPMENT CO., D/B/A MONMOUTH MALL, KRAVCO, INC., D/B/A QUAKERBRIDGE MALL, ROCKA-WAY CENTER ASSOCIATES, D/B/A ROCKAWAY TOWNSQ-UARE, WOODBRIDGE CENTER, INC., D/B/A WOODRIDGE CENTER, LIVINGSTON MALL VENTURE, D/B/A LIVINGSTON MALL, HARTZ MOUNTAIN INDUSTRIES, INC., D/B/A THE MALL AT MILL CREEK, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Bergen County

July 25, 1991.

*Frank Askin, Howard D. Moskowitz, William J. Volonte, Reitman, Parsonnet & Duggan,* for plaintiffs.

*Joseph Aviv,* and *Joann Burk,* for defendants J.M.B. Realty, Inc. and Prutaub Joint Venture.

*Curtis L. Michael,* for defendant Hartz Mountain Industries, Inc.

*Anne M. Patterson,* for defendants Woodbridge Center, Inc. and Cherry Hill Center, Inc.

*Brian H. McMahon,* for defendant Kravco, Inc.

*Ronald Wiss,* for defendants Livingston Mall Venture and Rockaway Center Associates.

*Mark A. Steinberg,* for defendant Equity Properties and Development Co.

CIOLINO, A.J.S.C.

The plaintiff, New Jersey Coalition Against War in the Middle East is a non-profit, unincorporated association involved in organizing public opinion and political lobbying activities directed to peace efforts aimed at halting the expansion of hostilities in the Middle East. Nine of the ten defendants may be described generically as regional shopping centers. The tenth defendant may be described as a community shopping center. (See Appendix A—Stipulations as to each malls' description.)

Plaintiffs seek relief in the nature of a permanent, mandatory injunctive order compelling the defendants to grant access to their private property so that an organization such as plaintiff may engage in expressive activity within the confines of a privately owned and enclosed commercial establishment. Plaintiffs argue their right under the New Jersey State Constitution to go into and upon defendants' shopping malls to distribute flyers and handbills discussing their view as to the United States' policy in the Middle East. Plaintiffs predicate this action upon the contention that private shopping malls in New Jersey have a constitutional obligation to provide a forum for expressive activity.

## APPLICABLE LAW

While counsel have generated volumes of pretrial briefs, they all agree that the applicable and controlling case law in this litigation is *State v. Schmid,* 84 *N.J.* 535, 423 *A.*2d 615 (1980).

All counsel have acknowledged that *Schmid* is determinative. Plaintiffs have at times departed from *Schmid* and have gone on to argue that shopping malls are the equivalent of the traditional downtown center or town square. Plaintiffs argue that these private property owners are the new town squares and must accommodate the constitutional requirements of free speech and assembly. They argue that they have become quasi public forums.

Plaintiffs' proofs have shown that public transportation, in the form of bus service, begins and ends at some of the malls. They have also shown that in at least one of the malls, police service is provided by the municipality. Some of the shopping malls employ a mix of private security officers and off duty local police officers for security purposes. The local police officers' presence is one of a uniformed officer with all of the necessary equipment attendant to police duties. None of the proofs reveal that the other functions of government such as municipal buildings, police stations, post offices, *etc.* appear in these private shopping mall settings. Proofs do reveal large concentrations of retail establishments. Department stores and individual retail establishments cause the congregation of large populations of people. Accepting and acknowledging all of the aforementioned proofs, I am of the opinion that they do not even begin to approach the necessary requirements of the First Amendment to the U.S. Constitution as set forth in the decision *Lloyd Corp. v. Tanner,* 407 *U.S.* 551, 92 *S.Ct.* 2219, 33 *L.Ed.*2d 131 (1972); *Marsh v. Alabama,* 326 *U.S.* 501, 66 *S.Ct.* 276, 90 *L.Ed.* 265 (1946). In his summation counsel for the plaintiff tacitly admits that the central issue in this litigation is not whether these shopping malls are public forums or town squares. Instead, he states, the issue is whether or not they meet the three prong test of *Schmid* and the requirements of the N.J. Constitution. Justice Handler states, "The United States Supreme Court has recently acknowledged in the most clear and unmistakable terms that a state's organic and general law can independently furnish a basis for protecting individual rights of speech and assembly. *PruneYard Shopping Center v. Robins, supra* 447 *U.S.* [74] at 80–81, 100 *S.Ct.* [2035] at 2040, 64 *L.Ed.*2d [741] at 752." *Schmid, supra* 84 *N.J.* at 553, 423 *A.*2d 615.

Continuing with his discussion of the applicability of the State Constitution in this setting in *Schmid,* Justice Handler states:

> We conclude, therefore, that the State Constitution furnishes to individuals the complementary freedoms of speech and assembly and protects the reasonable exercise of those rights. These guarantees extend directly to governmental entities as well as to persons exercising governmental powers. They are also

available against unreasonably restrictive or oppressive conduct on the part of private entities that have otherwise assumed a constitutional obligation not to abridge the individual exercise of such freedoms because of the public use of their property. The State Constitution in this fashion serves to thwart inhibitory actions which unreasonably frustrate, infringe, or obstruct the expressional and associational rights of individuals exercised under Article I, paragraphs 6 and 18 thereof.

... This question brings us to the heart of the problem—the need to balance within a constitutional framework legitimate interests in private property with individual freedoms of speech and assembly.

In the comparable federal setting, private property not used by the public or made available for public use does not ordinarily become subject directly to restrictions in favor of the public. *Hynes v. Oradell,* 425 *U.S.* 610, 619–620, 96 *S.Ct.* 1755, 1760, 48 *L.Ed.2d* 243, 252 (1976). Moreover, private property does not 'lose its private character merely because the public is generally invited to use it for designated purposes.' *Lloyd Corp. v. Tanner, supra,* 407 *U.S.* [551] at 569, 92 *S.Ct.* [2219] at 2229, 33 *L.Ed.2d* [131] at 143. See *PruneYard Shopping Center v. Robins, supra,* 447 *U.S.* at 82, 100 *S.Ct.* at 2041, 64 *L.Ed.2d* at 752; *Hudgens v. NLRB, supra,* 424 *U.S.* [507] at 519–520, 96 *S.Ct.* [1029] at 1036, 47 *L.Ed.2d* [196] at 206–207. Nevertheless, as private property becomes, on a sliding scale, committed either more or less to public use and enjoyment, there is actuated, in effect, a counterbalancing between expressional and property rights. *Marsh v. Alabama, supra,* 326 *U.S.* [501] at 506, 66 *S.Ct.* [276] at 278, 90 *L.Ed.* [265] at 268.

There is a parallel under our State Constitution. The state constitution equipoise between expressional rights and property rights must be similarly gauged on a scale measuring the nature and extent of the public's use of such property. Thus, even as against the exercise of important rights of speech, assembly, petition and the like, private property itself remains protected under due process standards from untoward interference with or confiscatory restrictions upon its reasonable use. *Robins v. PruneYard Shopping Center, supra,* 23 *Cal.3d* [899] at 910–911, 592 *P.2d* [341] at 347–348, 153 *Cal.Rptr.* [854] at 860–861; see *King v. South Jersey Nat'l Bank, supra,* 66 *N.J.* [161] at 175 [330 *A.2d* 1 at 8]. The constitutional protection of private property against undue interference or 'taking' is secured by our own Constitution. *N.J.Const.* (1947), Art. I, pars. 1 and 20. *Id.* 84 *N.J.* at 561, 423 *A.2d* 615.

Thereafter the *Schmid* Court cautions that a balance must be struck between the private property owners' rights and the expressional freedoms of others upon the private property. It further instructs this court as to the three-prong test which must be applied to ascertain the parameters of the rights of speech and assembly upon privately-owned property and the extent to which such property reasonably can be restricted to accommodate these rights. The three prong test is enunciated at page 563 of *Schmid.* The Court held:

... that under the State Constitution, the test to be applied to ascertain the parameters of the rights of speech and assembly upon privately owned property and the extent to which such property reasonably can be restricted to accommodate these rights involves several elements. This standard must take into account (1) the nature, purposes, and primary use of such private property, generally, its 'normal' use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property. This is a multi-faceted test which must be applied to ascertain whether in a given case owners of private property may be required to permit, subject to suitable restrictions, the reasonable exercise by individuals of the constitutional freedoms of speech and assembly.

## APPLICATION OF *SCHMID* STANDARD TO THE FACTS

### 1. What is the nature, purpose and primary use of the private property involved in this litigation, generally its "normal" use?

It is this court's opinion that that question may be answered unequivocally. The nature, purpose and primary use of the malls is commercial. The shopping malls are retail establishments, constructed, designed and maintained to do business and make a profit. I did not hear one fact at trial which controverts or contradicts this finding. The plaintiff offered no proofs which will lead this court to any other conclusion. The evidence and proofs offered by each of the defendants' various witnesses, *i.e.*, mall managers, architect familiar with the design and operation of enclosed shopping malls, planners and representatives of the malls' ownership and/or management all testified that the purpose of the malls' design and operation was to maximize sales and increase profits and thereby increase rentals. I find from all of the credible evidence which has been offered at this trial that each of these ten malls has dedicated its facilities and property to its primary purpose, that is, business and commercial ventures.

At trial, the plaintiffs offered the testimony of an expert witness qualified as a professional planner. This witness opined that since World War II, there had developed entities known as shopping malls. Prior to World War II, there were central places such as villages and cities with central business districts commonly known

as "downtown." The witness described a central business district as an area of concentrated activity and population with stores, walkways, common areas, parking areas and public transportation.

It was this witness's opinion that the defendant shopping malls have assumed the characteristics of a central business district, that is, they have replaced the former central business districts of pre-World War II. This opinion was offered even though the witness acknowledged that shopping malls are designed to encourage people to remain there and shop, thus furthering the malls commercial goals. I do not accept this witness's description as sufficient reasoning necessary for plaintiffs to meet the first prong of the *Schmid* test.

### 2. The extent and nature of the public's invitation to use this property.

As I have already found, each of the defendant shopping malls has as its purpose a commercial endeavor. They are not, however, to be treated as a single entity as the plaintiffs have urged. Each of them is different and distinct. The Mall at Short Hills and Riverside Square have common ownership and management. The Cherry Hill Mall and Woodbridge Center are owned and operated by another entity. Hamilton Mall and Quakerbridge Mall are owned and operated by a third entity. A fourth and distinct entity is the owner and manager of the Monmouth Mall. The Rockaway Town Square and the Livingston Mall are owned by separate and distinct entities and so is the Mall at Mill Creek. All of the malls with the exception of the Mall at Mill Creek are defined as "regional centers".

The 1991 Directory of Shopping Centers in the United States defines a regional center as follows: "Provides shopping goods, general merchandise, apparel, furniture and home furnishings in full depth and variety. It is built around the full-line department store with a minimum (gross leasable area) of 100,000 square feet, as the major drawing power. For even greater comparative shopping, two, three or more department stores may be included.

In theory, a regional center has a GLA of 400,000 square feet and can range from 300,000 to more than 1,000,000 square feet."

The Mall at Mill Creek is a community shopping center and it is described in the Directory of Shopping Centers as follows: "A community mall has a wider range of facilities for the sale of soft lines (apparel), hard lines (hardware, appliances, *etc.*) than the neighborhood center. It is built around a junior department store, variety store or discount department store as the major tenant in addition to a supermarket. It does not have a full line department store. The typical size of a community center is 150,000 square feet. In practice, a community center can range from 100,000 to 300,000 square feet. A community center is an intermediate shopping center and is the most difficult to estimate for size and pulling power."

There has been stipulated into evidence and attached to this opinion as an Appendix B, a list of all activities to which the public has been invited to in each of the defendant shopping malls. While testimony has been offered by the plaintiffs as to the extent and nature of the public's invitation to use the malls, particularly to walk for exercise, to browse, to attend promotional events, to dine, to congregate or to just sit about the malls, I find from the credible evidence that the primary purpose of each and every one of the activities listed on the attached Appendix B is to draw people to the mall and thereby maximize sales and increase profits. The malls have been designed to help customers focus upon the stores and the products contained in each of them. They are designed and managed to induce impulse buying which has been described by several of the witnesses as extremely important to the "lifeblood" of the shopping center. The anchor stores at either end of the mall, the common areas, landscaping and benches are all arranged to provide comfort and convenience for the prospective shopper.

All the common areas and walkways throughout these malls, are subject to maintenance charges imposed upon each of the tenants. The tenants' use of these common areas is restricted except in the

event of a mall sponsored promotion or event. The plaintiffs espouse a proposition which would make the common areas open to the public. They assert that except for reasonable restrictions which might be placed upon them, the public should be free to conduct the activities which plaintiffs propose in this litigation. From the credible evidence offered by the defendants, that is, the testimony of the mall managers, designers and planners, I find that the public's invitation to each of the defendant malls is for the purpose of the owners' and tenants' business and does not extend to the activities of leafletting or the distribution of literature.

### 3. The purpose of the expressional activity undertaken upon such property in relationship to both the private and public uses of the property.

Each of the defendant malls has a policy concerning outside use of the mall facilities. I accept the testimony of the defendant mall managers as credible and uncontroverted that the activities which are promotional in nature and sponsored by the mall are done to promote sales. Further, the events conducted in common areas and described as income producing events such as boat and car shows are also sponsored for the purpose of increasing income and attracting customers or potential customers to the mall. Events described as customer-enhancement events such as Boy Scout sponsored events, Easter Bunny, Santa Claus, holiday events are all calculated to attract customers to the mall and to increase customer base. The events which are community oriented are performed and conducted by the malls to garner community goodwill and to display themselves as good corporate citizens. All of the above-described events are addressed to the ultimate goal of increasing sales and attracting customers.

There has been no testimony or proofs offered that any of the defendant malls permit free and unfettered access and/or activities to their mall premises whether it be in the interior common areas, on the sidewalks surrounding the mall buildings or in the parking lots which are adjacent to the mall premises. The credible testimony offered by the defendants indicates that activities which

are perceived by mall management to be controversial in nature or confrontational are not permitted. Effectively, every effort is made to avoid two-sided issues. Specifically outside activities of either a religious or a political nature are avoided. This court does not accept the opinion of plaintiffs' expert that the mall has replaced the central business district or the townsquare, nor does this court accept the plaintiffs' position that all malls, particularly enclosed shopping malls are to be treated generically and uniformly. In applying the balance between the protections to be accorded private property and those to be given to expressional freedoms exercised upon such property a factual analysis of each case must be made. The burden of proof is upon the plaintiff and that burden of proof is individual and unique as to each of the defendants named. This court is of the opinion that the plaintiff has failed in that burden.

The court is compelled to examine the facts as to the nature, purpose and primary use of the private property, the extent and nature of the public's invitation to use that property and finally the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property. As a result of judgments made by the owners and operators of each of the malls and policies which they have established, each has embarked upon a program as to how to best manage their property and conduct their business. The plaintiffs have not met their burden of proving that their activities are not discordant with both the public and private uses to which these shopping malls are dedicated.

For each of the reasons set forth aforesaid, judgment is entered on behalf of each defendant and against the plaintiffs of no cause for action. Judgment is entered on behalf of the plaintiff as against the defendants Prutaub Joint Venture and JMB Income Properties, Ltd–XI on these defendants' counterclaim of no cause for action.

Judgment is entered without costs.

Plaintiff shall prepare the necessary Order.

## APPENDIX A—MALLS' DESCRIPTIONS

### CHERRY HILL CENTER, INC.

Cherry Hill Center is a regional shopping center situated on 95 acres of land, located at the intersection of Route 38 and Haddonfield Road in Cherry Hill, New Jersey. It is the largest shopping center in southern New Jersey. Cherry Hill Center has three department stores, approximately 27 restaurants and other food establishments, and more than 150 other tenants, including two bank branches, several optical centers, two travel agencies, several hair salons, clothing stores, home furnishing stores, jewelry stores, gift shops, book stores, six doctors' offices, an insurance agency, an automotive center, a gas station, and a leisure and entertainment center. Cherry Hill Center is a fully enclosed shopping center with two levels in one of its wings, and one level in other portions of the Center, and approximately 6000 parking spaces. Approximately 173,000 square feet of Cherry Hill Center's space consists of interior common area. There are eight customer entrances to the common areas of the Center.

### WOODBRIDGE CENTER, INC.

Woodbridge Center is a regional shopping center situated on 145 acres of land, located at the intersection of the Garden State Parkway, the New Jersey Turnpike, Route 1 and Route 9 in Woodbridge, New Jersey. Woodbridge Center has five department stores, 29 restaurants and other food establishments, and more than 210 other tenants, including two bank branches, three opticians, a travel agency, a hair salon, approximately 80 clothing stores, home furnishing stores, jewelry stores, gift shops, and book stores. Woodbridge Center is a fully enclosed shopping center with two levels and 9000 parking spaces. Approximately 273,000 square feet of Woodbridge Center's space consists of interior common area. There are three customer entrances to the common areas of the Center, all of which are near sidewalks. Benches are provided in various locations throughout Woodbridge

Center. Shrubbery and plants are located throughout the Center in certain areas as part of the decor of the Center. Benches are provided so that visitors may sit and relax during their visits to the Center. Visitors to the Center, whether or not they are currently shopping, are permitted to sit on the benches provided that they do not disrupt traffic or disturb other customers or tenants.

### LIVINGSTON MALL

Livingston Mall is a regional shopping center situated on 69 acres of land, located at the intersection of Eisenhower Parkway and South Orange Avenue in Livingston, New Jersey. Livingston Mall is privately owned real property which is currently owned by Livingston Mall Venture, a partnership. Corporate Property Investors (CPI) is a partner in Livingston Mall Venture. Livingston Mall has one hundred sixteen (116) tenants, including three (3) department stores, and fifteen (15) restaurants/food establishments. Other tenants include book and card stores, amusements, hair salons, a bank, a finance company, several jewelers, clothing, footwear and other specialty stores, a drug store and an optical center. The Mall does not possess a post office, movie theatre, auditorium, chapel or any other non-commercial establishment. Livingston Mall is a fully enclosed shopping center with two (2) levels and approximately 5500 parking spaces. Approximately 100,000 square feet of the mall are designated as common area. There are five (5) main public entrances to the mall interspersed along the mall's perimeter sidewalk, in addition to the entrances through the department stores.

### ROCKAWAY TOWNSQUARE MALL

Rockaway Townsquare is a regional shopping center situated on 238 acres of land, located at I–80 and Mount Hope Avenue in Rockaway Township, New Jersey. Rockaway Townsquare has one hundred sixty-seven tenants, including four (4) department stores, eighteen (18) restaurants, food establishments, clothing and

footwear stores, nine (9) jewelers, three (3) haircutters, electronics stores, books, cards, gifts, specialty shops, three (3) optical centers, two (2) banks, a travel agency, a drug store and a multi-screen theater. There are two levels surrounding a common walkway. Additionally, a second grouping of retail stores is separated from the main Mall enclosure but is not technically considered as "Rockaway Townsquare." Rockaway Townsquare is a fully enclosed shopping center with two levels and over 6600 parking spaces. Approximately 290,000 square feet of the mall are designated as common area. There are six (6) main public entrances to the enclosed mall interspersed along the mall's perimeter sidewalk, in addition to the entrances through the department stores. The Mall is completely surrounded by a sidewalk, and surrounding that sidewalk is a parking lot, all of which is wholly located on the mall's property. There are no public streets or walkways between the parking areas and bus stops and the enclosed mall. The mall does not contain separate rental rooms or auditoriums for meetings; nor does it possess a chapel. There are single and double benches and landscaped planters scattered throughout the common areas of the mall. Benches are provided as rest and relaxation areas for visitors. Persons who are not shopping are permitted to use the benches as long as they are not disruptive.

### MONMOUTH MALL

Monmouth Mall is a regional shopping center situated on 104 acres of land, located on Routes 35 and 36 and Wyckoff Road, in Eatontown, New Jersey. Monmouth Mall has four (4) department stores, fourteen (14) restaurants and food establishments, and over 120 other specialty stores including a bank branch, an optometrist's office, hair salons, clothing and apparel stores, home furnishing stores, jewelry stores, gift shops, book stores, several smaller "outbuildings" which house mall tenants, a senior citizen activity network office, and, up until a year ago, a United States Post Office Sub Station. Monmouth Mall is a fully enclosed

shopping center with three (3) levels and 8200 parking spaces. Approximately 96,218 square feet of the mall are designated as common areas. There are eleven (11) entrances to the enclosed mall interspersed along the mall's perimeter sidewalk. There are single and double benches, and landscaped planters scattered throughout the common areas of the mall. Benches are provided as rest and relaxation areas for visitors. Persons who are not shopping are permitted to use the benches as long as they are not disruptive, even if they are not spending money at the mall.

## THE MALL AT MILL CREEK

The Mall at Mill Creek is a community shopping center situated on approximately twenty-seven (27) acres of land, located off the New Jersey Turnpike exit 16E and Route 3 in Secaucus. The Mall at Mill Creek has a Caldor's, a Foodtown supermarket, a food court consisting of seven (7) restaurants, sixty-two (62) other retail shops including a book store, a bank branch, an optical store, a hair salon, clothing and apparel stores, a jewelry store, a travel agency and gift shops. The Mall at Mill Creek is a fully enclosed shopping center with one level and approximately 1,356 parking spaces. Approximately 47,248 square feet of the Mall are designated as interior common space, of which approximately 34,991 square feet are open to the public. There are three (3) public entrances to the Mall interspersed along the Mall's perimeter sidewalk. In addition, there are three (3) service/fire exit doors to the mall. There is a bench seating area running 27½ lineal feet and another bench seating area running 18½ lineal feet, both located in the common area of the mall. Benches are provided for mall visitors. There are three (3) elevated tree planters roughly four feet by four feet located in the common areas of the mall.

## RIVERSIDE SQUARE SHOPPING CENTER

Riverside Square Shopping Center (Riverside Square) is a regional shopping center situated on 31.44 acres of land, located on

Route 4 East at Hackensack Avenue North in Hackensack, New Jersey. Riverside Square has three (3) department stores (one of which is a specialty store), ten restaurants and other food establishments, and over eighty other specialty stores, including an optometrist's office, a travel agency, a hair salon, clothing and apparel stores, home furnishing stores, jewelry stores, gift shops, and a book store. Riverside Square is a fully enclosed shopping center with three (3) levels and 3,075 parking spaces. Approximately 131,287 square feet of the mall are designated as common areas. There are nine (9) entrances to the enclosed mall interspersed along the mall's perimeter sidewalk. Two banks of escalators, one stairway, and one elevator are available for public use to connect the different levels of the mall. There are single and double benches and landscaped planters placed throughout the common areas of the mall. Benches are provided as rest and relaxation areas for shoppers.

## THE MALL AT SHORT HILLS

The Mall at Short Hills (Short Hills) is a regional shopping center situated on forty-six acres of land, located at the intersection of Route 24 and John F. Kennedy Parkway in Essex County, New Jersey. Short Hills has two (2) department stores, approximately ten food establishments, and approximately 130 other tenants, including two banks, two beauty salons, an optometrist, a shoe repair, drug store, art galleries and two brokerage houses. Short Hills is a fully enclosed shopping center with two (2) levels and five thousand two hundred (5,200) parking spaces. Approximately 148,056 square feet of the mall are designated as common area. There are various benches and various plants scattered throughout the common area. There are benches scattered along the perimeter sidewalk.

## QUAKERBRIDGE MALL

Quakerbridge Mall is a regional retail shopping center situated on 104 acres of land, located at the intersection of Route 1 and

Quakerbridge Road in Lawrenceville, New Jersey. Quakerbridge Mall has four anchor stores, fourteen (14) food establishments and more than 120 other tenants including a movie theatre with four (4) screens, three (3) opticians, a bank branch office, a travel agency, a ticketron, jewelers, home furnishing stores, and a wide array of retail clothing shops. Quakerbridge Mall is a privately-owned, fully enclosed shopping center with two (2) levels comprised of several anchor department stores and smaller stores leased to individual tenants, as well as common areas between the stores that are maintained by the mall owners through maintenance fees paid, in part, by the mall's tenants through common are maintenance charges. Approximately 121,256 square feet of the interior mall are designed as common areas. There are four entrances to the enclosed mall. There are benches, plants and trees in various locations throughout the common area of the Quakerbridge Mall. Benches are provided for the comfort and convenience of persons at the mall. Individuals who are not currently shopping are permitted to use the benches provided that they are not disruptive, and do not interfere with the flow of pedestrian traffic. Loitering for extended periods of time is not allowed and is discouraged.

### HAMILTON MALL

Hamilton Mall is a regional retail shopping center situated on 104 acres of land, located at the intersection of Black Horse Pike and Pomona Road in Mays Landing, New Jersey. Hamilton Mall has three (3) anchor stores, twelve (12) food establishments, and more than 130 other tenants including a travel agency, a hair salon, a testing center, jewelers, home furnishing stores and a wide array of retail clothing shops. Hamilton Mall is a privately-owned, fully enclosed shopping center with two (2) levels comprised of several anchor department stores and smaller stores leased to individual tenants, as well as common areas between the stores that are maintained by the mall owners through maintenance fees paid, in part, by the mall's tenants through common

area maintenance charges. Approximately 135,000 square feet of the interior mall are designed as common areas. There are four entrances to the enclosed mall. There are benches and planters in various locations throughout the common area of the Hamilton Mall. Benches are provided for the comfort and convenience of persons at the mall. Individuals who are not currently shopping are permitted to use the benches provided that they are not disruptive, and do not interfere with the flow of pedestrian traffic. There are signs posted stating that loitering is prohibited.

## APPENDIX B—LIST OF EVENTS

### CHERRY HILL CENTER, INC.

Cherry Hill Center sponsored the following public events which were open to Center patrons and other members of the public without admission charge, in the Center's common areas during 1990:

Bel Canto Opera Competition
Spring Fashion Show
Easter Bunny Arrival
Global ReLeaf Tree Seedling Giveaway
Bugs Bunny 50th Anniversary Show
Mickey Mouse Meet and Greet
Back Yard Circus
Fall Fashion Show
Trick or Treat at the Mall
Santa's Arrival
Senior Citizen Thanksgiving Dinner
Breakfast with Santa
Holiday Musical Performers
Mall Walkers Blood Pressure Screening
Mall Walkers 5th Anniversary Salute
Hadassah Holiday Gift Wrap
Toys for Tots
Visit Santa Claus
Singing Santa for the Hearing Impaired
Grand Re-Opening with the New Jersey Pops
Fashion Spectacular

Snoopy's Greatest Adventures
The Jones New York Collection
Concert by the New Jersey Youth Symphony
Voter Registration Campaign

## *WOODBRIDGE CENTER*

Woodbridge Center sponsored the following public events which were open to Center patrons and other members of the public without admission charge in the Center's common areas during 1990:

Ice Sculpture event
Hadassah Gift Wrap
Boat and Leisure Living Show
Fashion Show
Bunny Arrival
Pancake Breakfast
New Jersey Youth Symphony
NJAEYC
St. Elizabeth's Hospital Cholesterol Screening
Global ReLeaf Tree Giveaway
Mademoiselle Fashion Show
Vacation Show
Baby Fest
Father's Day Freeze Modeling
New Jersey Pops Concert Series
Mickey and Minnie Breakfast
Muppet Traffic Safety Show
Children's Fashion Show
Newark Museum Workshop
Ninja Turtle Show
Fall Fashion Show
Safe Halloween Parade
Santa's Arrival
Holiday Community Entertainment
1990 Car Show
16th Annual U.S. Marine Corp. Toys for Tots

## LIVINGSTON MALL

Livingston Mall has sponsored the following events at the Mall in 1990 to which the general public was invited without charge:

Boat & Leisure Show
Bridal Fair
Bridal Fashion Show
Spring Fashion Shows
Easter Bunny Visits Mall
Hand Made in America Craft Show
Child ID Day
Prom Fashion Show
Voter Registration Drive
Home Show
Juvenile Diabetes Walk-a-thon
Trick or Treating in the Mall
Santa Arrives
Santa Visits Mall
Story Hours
Holiday Entertainment Programs

## ROCKAWAY TOWNSQUARE

Rockaway Townsquare sponsored the following events at the mall in 1990 to which the general public was invited without charge:

Antique Show
Annual Bridal Festival
Bridal Fashion Event
Boat Show
Spring Fashion Event
Easter Bunny Photos
Cholesterol Screening
Meet & Greet Mickey & Minnie Mouse
Prom Fashion Event
Double Dare Road Show
Jail-a-thon for Cancer
Leisure Living Show
Meet & Greet Bart Simpson

German Band Performance
Back to School Fashions
Fall Fashion Event
Crime Prevention Day
Handmade in America Show
Santa's Arrival Breakfast
Photos with Santa
Choral Groups

## *MONMOUTH MALL*

Monmouth Mall has sponsored the following events at the mall during 1990 and 1991 to which the public was invited free of charge:

*1990:*
Monmouth County Census Bureau Display
Children's Dental Health Promotion Day
World Gym Aerobics Presentation
Spring Fashion Show
Photos with the Easter Bunny
Freeze Modeling
Spring Community Fair
SummerSidewalk Sale
Fall Fashion Show
Halloween Celebration, With Trick–or–Treating for the Children
Photos with Santa
"Sounds of Christmas" Performances
"Makin Music" Holiday Concert
Piano Recital
*1991:*
4H—Seeing Eye Dog Mall Walk
St. Patrick's Day 5k Run at the Mall
Free "Video Postcards From Home" to the troops in the Gulf Program
Berlin Wall Exhibit
Lighting of the Christmas Tree
Savvy Shopper Sidewalk Sale
Photos of the Easter Bunny
After Hours Savvy Shopper Fashion Show/Cocktail Hour
Halloween at the Mall

Santa Photos Campaign
Santa Entertainment
Spring Fashion Show
July Sidewalk Sale
Fall Fashion Show
Holiday Choral Concerts
Appearance by Soap Opera Character Jackson Montgomery
of "All My Children"

## THE MALL AT MILL CREEK

The following activities of non-profit organizations occurred at The Mall at Mill Creek:

*1989:*

New Jersey Prosecutor's Victim and Witness Association—Information for Crime Victims

Secaucus Recreation Department Art Display

Meadowlands Hospital Medical Center Health Fair

March of Dimes Event

Deborah Hospital Foundation Gift Wrap

*1990:*

American Cancer Society Daffodil Sale

Bradley for U.S. Senate Voter Registration Drive

Fairleigh Dickinson University Information

*March of Dimes Information*

PSE & G Information

Secaucus Chapter of Deborah Raffle Sale

Secaucus Lions White Cane Drive

U.S. Naval Sea Cadets Recruitment

U.S. Army Recruiting Information

New Jersey Prosecutor's Victims and Witness Association Information disseminated to the public

U.S. Veterans of Foreign Wars Recruiting

Secaucus High School Art Expo

American Cancer Society Jail–A–Thon

The Mall at Mill Creek sponsors a "Merry Milers Mall Walk". Participants in this event have access to the Mall during hours when the Mall shops are not yet open for business as well as

during regular business hours. There is no requirement that a person shop at the Mall in order to participate in this event.

## *RIVERSIDE SQUARE SHOPPING CENTER*

Riverside Square has sponsored the following events over the last two years:

*1989:*

Business and Finance Show
Spring Fashion Show
Easter Bunny Show
Spring Events
Spring Kidfest
Springbreak Kidsfest
Home and Garden Show
Working Woman Show
Working Woman Seminar
Bergen County Read–In Festival
5th Annual Dell New Jersey Crossword Open
Summer Concert Series
Back–To–School Series
Fashion Show
8th Annual "Riverside Rapids" Speed Chess Tournament
Home Show
Halloween Kidsfest
Holiday Entertainment (Nov. 29, 1989—Dec. 21, 1989)
1989 U.S. Marine Corps. Toys for Tots Drop Box

*1990:*

Winter Antique Show
"Today's Youth" Art Show
Spring Fashion Show
Earth Day Celebration
Victorian Garden Party
6th Annual Dell New Jersey Crossword Open
Great Outdoors Summer '90 Expo
Summer Antique Show
Music Festival: 5 Mondays (July 1990—Aug. 1990)
Back-to-School Kidsfest 1990
Fall Career Fashion Show

Great Scotland Festival
9th Annual Invitational Masters Speed Chess Tournament
County Craft Festival
"Picasso of Pumpkins" Show
Halloween Activities Day
Holiday Entertainment (Nov. 28, 1990—Dec. 24, 1990)

Most of the events took place during regular mall hours but a few occurred when the mall stores were closed and several occurred in The Meeting Room. Riverside Square has a meeting room called "The Meeting Place," which may be used for a fee by the general public. The Meeting Place can fit up to 150 people and is available for bookings Monday through Fridays from 8 A.M. to 12 noon, 1 P.M. to 5 P.M., and 6 P.M. to 9:30 P.M., and Saturday from 8 A.M. to 12 noon, and 1 P.M. to 5 P.M. All bookings must be made in advance and approved by management.

### SHORT HILLS MALL

Short Hills has sponsored the following events in 1990 and 1991:
Mini Symphony performance of June 4
Morris Nanton Jazz Trio
String Ensemble of June 25
September Fall Concert Series
1. Nelson Riddle Orchestra
2. Tommy Dorsey Orchestra
3. Classical Beethoven and Bach
4. Guitars of Splendor
5. Glenn Miller Orchestra
6. Morris Nanton Jazz Trio
7. Piano Concerto
8. Classical Mozart by mini-symphony
Special Performance of Count Basie Orchestra
Santa Claus
Peter Rabbit Easter program and display
Valentine's Day piano concert series

These events were scheduled during mall hours. The September concert series was held on eight consecutive Sundays from 2 P.M. to 3 P.M.

Short Hills sponsors a fitness walk program, which allows access to the mall before daily business hours, from 7:30 A.M. until 10:00 A.M. The program is sponsored in cooperation with the Morristown Memorial Hospital and open to all members of the public who register in writing and receive a license. Over two hundred people have registered with the mall for the program.

## QUAKERBRIDGE MALL

The Quakerbridge Mall sponsored the following public events at the mall in 1990 to which shoppers and other members of the general public were invited without an admission charge:

Antique Show
January Sidewalk Sale
Colonial Arts Show
Boat Show
Bridal Fair
Interior Design Show
New Car Show
Boy Scouts of America
Home and Garden Show
Antique and Collectibles Show
FFA Floral Design Show
Bunny Arrival
Spring Freeze Modeling
Investment Show
Health and Fitness Show
Iris Sale
Fall Kids Show
Back To Fall Fashion Show
MDA Telethon
Fall Travel Show
Home and Energy Show
Winter Survival Show
Holiday Gifting Show
Holiday Tables Show
Santa's Arrival
Breakfast with Santa

(Quakerbridge Mall information continued on following page . . .)

The Quakerbridge Mall had a community day in 1990 where approximately ten non-profit and non-commercial groups, including the American Cancer Society, were present. Each group had its own table located in the common area and was permitted to speak to persons and hand out literature only to persons who approached their tables. No political or religious groups were allowed to participate in community day.

On one occasion, the Quakerbridge Mall allowed representatives of Rider College to come to the mall and set up a tax information table at which visitors' questions about tax matters were answered.

The Muscular Dystrophy Association sponsored a telethon which was held in the common area of the Quakerbridge Mall. A regional phone bank was set up and entertainment was provided. Information about mall activities and tenant shops was provided by the mall.

On one occasion, the Quakerbridge Mall's Merchant's Association and Lawrence Township jointly sponsored an exhibition and display of local municipal groups such as the volunteer fire department and the volunteer emergency medical technicians. No fundraising was conducted.

During the holiday season, choirs sing at the Quakerbridge Mall and provide entertainment.

The Merchant's Association of Quakerbridge Mall sponsors a mall walkers program jointly with a local area hospital. Participation is open to the public. No cost or purchase is necessary. The mall is opened at 8 A.M. on weekdays and Saturdays for the convenience of tenants and their employees. Members of the mall walkers program may walk in the mall at this time provided they display a membership button at all times.

## HAMILTON MALL

The Hamilton Mall has sponsored the following public events at the mall in 1990 to which shoppers and other members of the general public were invited without an admission charge:

Winter Clearance Sidewalk Sale
Retirement Show and Band performance
Valentine's Celebration/Bridal Fair & Fashion Show
Colonial Arts Show
Spring Home and Garden Show
Atlantic City Magazine Restaurant Gala Fashion Show
Easter Bunny Arrival Parade and Spring Freeze Modeling
Your Cholesterol Counts
Day Of The Young Child
Auto Show
Showcase of Services
Women of the 90's Show
RNS Mother's Day Celebration
Arts and Crafts Show
Master Artists Tour
Toys For Dads
Rose Show
Antique Shoe/Father's Day Event
Informal Modeling At The Atlantic City Race Course
Hamilton Mall Night At The Races
The Artie Shaw Band Performance and Mallwalker Club Reception
ACC Day At The Mall
Key To Success Seminar
Health To You Show
TV 40 Grand Prize Drawing
Key To Success Phase II Awards
Boat Show
Toddler Tryouts
Fall Home Show
4–H Day At The Mall
1991 Auto Preview
Halloween Trick or Treat and Costume Contest
Orchid Society Show

Santa's Arrival

Coastal Cops Celebration Holiday

Holiday Fashion Extravaganza

WKTU Charity Day

Shopper Service Day

(Hamilton Mall information continued on following page ...)

After complying with every requirement set forth in the guidelines for non-commercial activity, the Kiwanis and Girl Scouts were permitted to use the Community Booth at the Hamilton Mall in a manner consistent with the mall's policies. A non-partisan voter registration drive was held on consecutive Saturdays in September 1990 and was sponsored by the Atlantic Area Business and Professional Women, Inc.

The mall also coordinates with local businesses a program for children ages six to twelve called "Coastal Cops". The activities include a clean-up effort of the area's benches.

Hamilton Mall Merchant's Association sponsors a mall walkers program. Participation is open to the public. No cost or purchase is necessary. The mall is opened as early as 7 A.M. on weekdays and Saturdays for the convenience of tenants and their employees. Members of the mall walkers program may walk in the mall at this time provided they display a membership button at all times.